NEW-YORK,
May, 1838.

PARKER & EDGARTON *vs.* FOOTE.

Parker,
v.
Foote.

The doctrine of presumption of right by grant or otherwise as applied to the windows of one person overlooking the land of another, so that by an uninterrupted enjoyment for twenty years the owner acquires a right of action against his neighbor for stopping the lights by the erection of a building upon his own land, forms no part of our law : such a rule is not adapted to the circumstances or existing state of things in this country.

The question of presumption of right by grant or otherwise, although there has been an uninterrupted enjoyment of an incorporeal hereditament for more than twenty years, must be submitted to the jury ; a judge is not justified in telling them that they must, but should instruct them that they may presume a grant, except in a plain case where there is no evidence to repel the presumption arising from twenty years uninterrupted adverse user.

To authorize the presumption of a grant, the enjoyment of the easement must not only be uninterrupted for the period of twenty years, but it must be adverse, not by leave or favor, but under a claim or assertion of right ; and it must be with the knowledge and acquiescence of the owner.

Whether when it is affirmatively proved that in fact there never was a grant, a jury would be warranted in a proper case to presume a grant, *quere.*

The doctrine that there may be cases relating to the use of water, which form exceptions to the rule that the enjoyment must be adverse to authorize the presumption of a grant, questioned.

THIS was an action on the case for stopping *lights* in a dwelling house, tried at the Oneida circuit in April, 1836, before the Hon. HIRAM DENIO, then one of the circuit judges.

In 1808 the defendant being the owner of two village lots situate in the village of Clinton, adjoining each other, sold one of them to Joseph Stebbins, who in the same year erected a dwelling house thereon *on the line* adjoining the other lot with windows in it overlooking the other lot. The defendant also in the same year built an addition to a house which stood on the lot which he retained, leaving a space of about *sixteen feet* between the house erected by Stebbins and the addition put up by himself. This space was subsequently occupied by the defendant as an alley leading to buildings situate on the rear of his lot, and was so used by him until the year 1832, when (*twenty four years* after the erection of the house by Stebbins,) he erected a store

on the alley, filling up the whole space between the two houses, and consequently *stopping the lights* in the house erected by Stebbins. At the time of the erection of the store, the plaintiffs were the owners of the lot originally conveyed to Stebbins, by the title derived from him, and were in the actual possession thereof, and brought this action for the stopping of the lights. Stebbins (the original purchaser from the defendant,) was a witness for the plaintiffs, and on his cross-examination, testified that he never had any written agreement, deed or writing granting permission to have his windows overlook the defendant's lot, and that nothing was ever said upon the subject. The village of Clinton is built upon a square called Clinton Green, the sides of the square being laid out into village lots, and contained at the time of the trial about 1000 inhabitants. On motion for a nonsuit, the defendant's counsel insisted that there was no evidence of a *user* authorizing the presumption of a grant as to the *windows ;* that the *user* in this case was merely permissive, which explained and rebutted all presumption of a grant. That if the *user*, in the absence of other evidence, authorized the presumption of a grant, still that here the presumption was rebutted by the proof, that in fact there never had been a grant. The circuit judge expressed a doubt whether the modern English doctrine in regard to stopping lights, was applicable to the growing villages of this country, but said he would rule in favor of the plaintiffs, and leave the question to the determination of this court. He also decided that the fact, whether there was or was not a grant in writing as to the windows, was not for the jury to determine ; that the law presumed it from the user, and it could not be rebutted by proving that none had in truth been executed. After the evidence was closed, the judge declined leaving to the jury the question of presumption of right, and instructed them that the plaintiffs were entitled to their verdict. The jury accordingly found a verdict for the plaintiffs, with $225 damages. The defendant having excepted to the decisions of the judge, now moved for a new trial.

*W. C. Noyes*, for the defendant, insisted that the plaintiffs ought to have been nonsuited; that although in England, it had been holden in the later cases, that an action lies for stopping or obstructing lights founded on a *user* of twenty years, such formerly was not the law *there*, and the new rule has never been adopted here. In *Bury* v. *Pope*, Cro. Eliz. 118, it is said "It was argued by all the justices, that if two men be owners of two parcels of land adjoining, and *one of them* doth build a house upon his land and makes windows and lights looking into the other's lands, and this house and the lights have continued for the space of 30 or 40 years, yet *the other* may upon his own land and soil lawfully erect a house or other thing against the said lights and windows, and the other can have no action, *for it was his folly to build his house so near to the other's land;*" and it was adjudged accordingly. The same doctrine is holden in 1 Shower, 7. Presumptions of grants in support of long and uninterrupted enjoyment of easements had prevailed for centuries in England, but an action on the case for *stopping and obstructing lights* was never sustained until 1761, when Wilmot, J. at the Assizes, for the first time, ruled that such action lay, and he afterwards held the same doctrine at the C. B. Sittings in 9 Geo. III. (1769,) as stated by Serj. Williams, in 2 Saund. 175, *a.;* but it does not appear to have been adopted in the K. B. until 26 Geo. III. (1786,) when on a motion for a new trial as said by BULLER, J., it had been held that *twenty years* quiet and uninterrupted possession of ancient lights was a sufficient ground from which a jury might presume a grant, 3 T. R. 159, *n. c.* In 1803 however, in the case of *Daniel* v. *North*, 11 East, 371, the doctrine appears to have been conceded by all the judges, and the later decisions are all in conformity to it. The counsel however contended that those decisions were not obligatory upon our courts, because they were a departure from the common law as it existed in 1776 when adopted here, and were not supported by the principle of the law upon which was based the doctrine of presumption of grants. In the case of *ways, commons, fisheries*, the *flowing of lands* and the like, a grant is presumed after a con-

NEW-YORK,
May, 1838.

Parker
v.
Foote.

NEW-YORK,    tinued and uninterrupted enjoyment of twenty years, upon
May, 1838.   the ground that the right exercised is in hostility to the title,
Parker       and in derogation of the rights of the original owner—an
v.           actual ouster of him ; for to lay the foundation for the pre-
Foote.       sumption of a grant, the enjoyment must be *adverse*, under
a *claim of title*, and with the knowledge and acquiescence
of the opposite party : in such cases a grant is presumed for
the purpose of quieting the possession thus adversely held
and used. All which is totally imapplicable in reference to
windows or lights overlooking the land of another. The
enjoyment in such cases is *no encroachment* upon the rights
of another; *no occupation* of that which before belonged to
another ; *no adverse possession* under a *claim of title ;* it is
the exercise of a lawful right for which no action lies ; and it
would be strange indeed that the mere continuance of such
enjoyment, lawful in itself, interfering with no one, exercis-
ing no dominion over the property of another, and asserting
no title in opposition to the title of such other, should by the
lapse of time on the one hand ripen into a right, and on the
other deprive a party of his own ; and yet it is part of the
modern doctrine upon this subject that such will be the effect,
unless the owner of the adjoining land does within twenty
years *build opposite to the windows* which thus overlook
his property. The counsel farther insisted, that if in this
case, it could be deemed that there was such an *user* as,
unexplained, would have warranted the presumption of a
grant, that the evidence was conclusive to rebut the presump-
tion ; and that the judge erred in refusing to submit the
question to the jury.

C. P. *Kirkland* and J. A. *Spencer*, for the plaintiffs.

*By the Court*, BRONSON, J. The modern doctrine of
presuming a right, by grant or otherwise, to easements and
incorporeal hereditaments after twenty years of uninterrupted
adverse enjoyment, exerts a much wider influence in
quieting possession, than the old doctrine of title by pre-
scription, which depended on immemorial usage. The pe-
riod of 20 years has been adopted by the courts in analogy
to the statute limiting an entry into lands ; but as the stat-

ute does not apply to incorporeal rights, the adverse user is not regarded as a legal bar, but only as a ground for presuming a right, either by grant or in some other form. The case of *Holcroft* v. *Heel*, 1 Bos. & Pull, 400, apparently proceeds on the ground of a legal bar; but the report is inaccurate, as will be seen by the explanation of Le Blanc, J. in *Campbell* v. *Wilson*, 3 East, 298.

To authorize the presumption, the enjoyment of the easement must not only be uninterrupted for the period of 20 years, but it must be adverse, not by leave or favor, but under a claim or assertion of right; and it must be with the knowledge and acquiescence of the owner. *Campbell* v. *Wilson*, 3 East, 294. *Daniel* v. *North*, 11 East, 372. *Barker* v. *Richardson*, 4 B. & Ald. 579. *Hill* v. *Crosby*, 2 Pick. 466. *Sargent* v. *Ballard*, 9 Pick. 251. *Bolivar Comp*. v. *Neponset Comp.*, 16 Pick. 241. *Chalker* v. *Dickinson*, 1 Conn. R. 382. See also *Doe* v. *Butler*, 3 Wendell, 149. It is said that there may be cases relating to the use of water, which form exceptions to the rule that the enjoyment must be adverse to authorize the presumption of a grant. See *Bealey* v. *Shaw*, 6 East, 208. *Ingraham* v. *Hutchinson*, 2 Conn. R. 584. To this doctrine I cannot subscribe. Without reviewing the cases in relation to the rights of different riparian proprietors on the same stream, I think it sufficient at this time to say, that in whatever manner the water may be appropriated or enjoyed, it must of necessity be either rightful or wrongful. The use of the stream must be such as is authorized by the title of the occupant to the soil over which the water flows, or it must be a usurpation on the rights of another. If the enjoyment is rightful, there can be no occasion for presuming a grant. The title of the occupant is as perfect at the outset, as it can be after the lapse of a century. If the user be wrongful, a usurpation to any extent upon the rights of another, it is then adverse; and if acquiesced in for 20 years, a reasonable foundation is laid for presuming a grant. If the enjoyment is not according to the title of the occup' the injured party may have redress by action. His reme y does

NEW-YORK,  not depend on the question whether he has built on his mill-
May, 1838.  site or otherwise appropriated the stream to his own use.

Parker  It is enough that his right has been invaded; and although
v.  in a particular case he may be entitled to recover only
Foote.  nominal damages, that will be a sufficient vindication of his
title, and will put an end to all ground for presuming a
grant. *Hobson* v. *Todd*, 4 T. R. 71. *Bolivar Co.* v. *Ne-
ponset Co.*, 16 Pick. 241. *Butman* v. *Hussey*, 3 Fairfield,
(Me.) 407.

The presumption we are considering is a mixed one of
law and fact. The inference that the right is in him who
has the enjoyment, so long as nothing appears to the con-
trary, is a natural one—it is a presumption of fact. But ad-
verse enjoyment, when left to exert only its natural force
as mere presumptive evidence, can never conclude the true
owner. No length of possession could work such a conse-
quence. Hence the necessity of fixing on some definite pe-
riod of enjoyment, and making that operate as a presump-
tive bar to the rightful owner. This part of the rule is
wholly artificial; it is a presumption of mere law. In general,
questions depending upon mixed presumptions of this de-
scription must be submitted to the jury, under proper in-
structions from the court. The difference between length
of time which operates as a *bar* to a claim, and that which
is only used *by way of evidence*, was very clearly stated by
Lord Mansfield, in the *Mayor &c.* v. *Horner*, Cowp. 102.
" A jury is concluded," he says, " by length of time that
operates as a bar, as where the statute of limitations is
*pleaded in bar* to a debt; though the jury is satisfied that
the debt is due and unpaid, it is still a bar. So in the case
of prescription, if it be time out of mind, a jury is bound to
conclude the right from that prescription, if there could be
a legal commencement of the right. But length of time
*used merely by way of evidence*, may be left to the considera-
tion of a jury to be credited or not, and to draw their in-
ference one way or the other, according to circumstances."
In *Darwin* v. *Upton*, 2 Saund. 175, note (2,) the question
related to lights, and it was said by the same learned judge,
that " acquiescence for 20 years is such decisive presump

tion of a right by grant or otherwise, that unless contradict-ed or explained, the jury ought to believe it, but it is impossi-ble that length of time can be said to be an absolute bar, like a statute of limitations ; it is certainly a presumptive bar which ought to go to the jury." Willes, J. mentioned a case before him, in which he held uninterrupted possession of a pew for 20 years to be presumptive evidence merely ; in which opinion he was afterwards confirmed by the C. B. The other judges concurred ; and Gould J., before whom the action was tried, said, he never had an idea but it was a question for a jury ; and he compared it to the case of trover, where a demand and refusal are evidence of, but not an actual conversion.

Some of the cases speak of the presumption as conclu-sive. *Bealey* v. *Shaw*, 6 East, 208. *Tyler* v. *Wilkinson*, 4 Mason, 397. This can only mean that the presumption is conclusive, where there is no dispute about the facts upon which it depends. It has never been doubted that the inference arising from 20 years enjoyment of incorpo-real rights, might be explained and repelled : nor so far as I have observed, has it ever been denied that questions of this description belong to the jury. The presumption we are considering has often been likened to the inference which is indulged that a bond or mortgage has been paid, when no interest has been demanded within 20 years. Such questions must be submitted to the jury to draw the proper conclusion from all the circumstances of each par-ticular case. *Jackson* v. *Wood*, 12 Johns. R. 242. *Jack-son* v. *Sackett*, 7 Wendell, 94. In *Sivett* v. *Wilson*, 3 Bing. 115, the question was on a right of way : the defendant pleaded a grant, and the judge left it to the jury to say, whether they thought the defendant had exercised the right of way uninterruptedly for more than 20 years, by virtue of a deed ; and Best, C. J., said the direction was perfectly right. He added " I do not dispute that if there had been an uninterrupted usage for twenty years, the jury might be authorized to presume it originated in a deed ; but even in such a case a judge would not be justified in saying that they must, but that they may presume the deed. If, how-

NEW-YORK, May, 1838.

Parker
v.
Foote.

ever, there are circumstances inconsistent with the existence of a deed, the jury should be directed to consider them, and to decide accordingly." In *Hill* v. *Crosby*, 2 Pick. 466, the court set aside the verdict, although they thought it right, because the question had not been referred to the jury.

In a plain case, where there is no evidence to repel the presumption arising from 20 years uninterrupted adverse user of an incorporeal right, the judge may very properly instruct the jury that it is their duty to find in favor of the party who has had the enjoyment; but still it is a question for the jury. The judge erred in this case in wholly withdrawing that question from the consideration of the jury. On this ground, if no other, the verdict must be set aside.

The bill of exceptions presents another question which may probably arise on a second trial, and it seems proper therefore to give it some examination.

As neither light, air nor prospect can be the subject of a grant, the proper presumption, if any, to be made in this case, is, that there was some covenant or agreement not to obstruct the lights. *Cross* v. *Lewis*, 2 Barn. & Cress. 628, per Bayley, J. *Moore* v. *Rawson*, 3 Barn. & Cress. 332, per Littledale, J. But this is a matter of little moment. Where it is proper to indulge any presumption for the purpose of quieting possession, the jury may be instructed to make such an one as the nature of the case requires. *Eldridge* v. *Knott*, Cowp. 214.

Most of the cases on the subject we have been considering, relate to ways, commons, markets, water-courses, and the like, where the user or enjoyment, if not rightful, has been an immediate and continuing injury to the person against whom the presumption is made. His property has either been invaded, or his beneficial interest in it has been rendered less valuable. The injury has been of such a character that he might have immediate redress by action. But in the case of windows overlooking the land of another, the injury, if any, is merely ideal or imaginary. The light and air which they admit are not the subjects of property beyond the moment of actual occupancy; and for overlook-

ing one's privacy no action can be maintained.　The party has no remedy but to build on the adjoining land opposite the offensive window.　*Chandler* v. *Thompson*, 3 Campb. 80.　*Cross* v. *Lewis*, 1 Barn. & Cress. 686, per Bayley, J.　Upon what principle the courts in England have applied the same rule of presumption to two classes of cases so essentially different in character, I have been unable to discover.　If one commit a daily trespass on the land of another, under a claim of right to pass over, or feed his cattle upon it ; or divert the water from his mill, or throw it back upon his land or machinery ; in these and the like cases, long continued ac-quiescence affords strong presumptive evidence of right.　But in the case of lights, there is no *adverse user*, nor indeed any use whatever of another's property ; and no foundation is laid for indulging any presumption against the rightful owner.

　Although I am not prepared to adopt the suggestion of Gould, J. in *Ingraham* v. *Hutchinson*, 2 Conn. R. 597, that the lights which are protected may be such as *project* over the land of the adjoining proprietor ; yet it is not impossible that there are some considerations connected with the subject which do not distinctly appear in the reported cases.　See *Knight* v. *Halsey*, 2 Bos. & Pull. 206, per Rooke, J.　1 Phil. Ev. 125.

　The learned judges who have laid down this doctrine have not told us upon what principle or analogy in the law it can be maintained.　They tell us that a man may build at the ex-tremity of his own land, and that he may *lawfully* have win-dows looking out upon the lands of his neighbor.　2 Barn. & Cres. 686.　3 id. 332.　The reason why he may lawfully have such windows, must be, because he does his neighbor no wrong ; and indeed, so it is adjudged as we have already seen ; and yet some how or other, by the exercise of a law-ful right in his own land for 20 years, he acquires a beneficial interest in the land of his neighbor.　The original proprietor is still seized of the fee, with the privilege of paying taxes and assessments : but the right to build on the land, without which city and village lots are of little or no value, has been destroyed by a lawful window.　How much land can thus be

rendered useless to the owner, remains yet to be settled.   2
Barn. & Cres. 686.   2 Carr. & Payne, 465.   5 id. 438.
Now what is the acquiescence which concludes the owner?
No one has trespassed upon his land, or done him a legal in-
jury of any kind.   He has submitted to nothing but the ex-
ercise of a *lawful* right on the part of his neighbor.   How
then has he forfeited the beneficial interest in his property?
He has neglected to incur the expense of building a wall 20
or 50 feet high, as the case may be—not for his own benefit,
but for the sole purpose of annoying his neighbor.   That was
his only remedy.   A wanton act of this kind, although done
in one's own land, is calculated to render a man odious.   In-
deed, an attempt has been made to sustain an action for erect-
ing such a wall.   *Mahan* v. *Brown*, 13 Wendell, 261.

There is, I think, no principle upon which the modern
English doctrine on the subject of lights can be supported.
It is an anomaly in the law.   It may do well enough in
England; and I see that it has recently been sanctioned
with some qualification, by an act of parliament.   Stat. 2 &
3, Will. 4, c. 71, § 3.   But it cannot be applied in the grow-
ing cities and villages of this country, without working the
most mischievous consequences.   It has never, I think, been
deemed a part of our law.   3 Kent's Comm. 446, note (a.)
Nor do I find that it has been adopted in any of the states.
The case of *Story* v. *Odin*, 12 Mass. R. 157, proceeds on
an entirely different principle.   It cannot be necessary to
cite cases to prove that those portions of the common law
of England which are hostile to the spirit of our institutions,
or which are not adapted to the existing state of things in
this country, form no part of our law.   And besides, it
would be difficult to prove that the rule in question was
known to the common law previous to the 19th of April,
1775.   Const. N. Y., art. 7, § 13.   There were two *nisi
prius* decisions at an earlier day, (*Lewis* v. *Price* in 1761,
and *Dongal* v. *Wilson* in 1763,) but the doctrine was not
sanctioned in Westminster Hall until 1786, when the case
of *Darwin* v. *Upton* was decided by the K. B.   2 Saund.

175, note (2.)  This was clearly a departure from the old law.  *Bury* v. *Pope*, Cro. Eliz. 118.

There is one peculiar feature in the case at bar.  It appears affirmatively that there never was any grant, writing, or agreement about the use of the lights.  A grant may under certain circumstances be presumed, although, as Lord Mansfield once said, the court does not really think a grant has been made.  *Eldridge* v. *Knott*, Cowp. 214.  But it remains to be decided that a right by grant or otherwise can be presumed when it plainly appears that it never existed.  If this had been the case of a way, common, or the like, and there had actually been an uninterrupted adverse user for 20 years under a claim of right, to which the defendant had submitted, I do not intend to say that proof that no grant was in fact made would have overturned the action.  It will be time enough to decide that question when it shall be presented.  But in this case the evidence of Stebbins, who built the house, in connection with the other facts which appeared on the trial, proved most satisfactorily that the windows were never enjoyed under a claim of right, but only as a matter of favor.  If there was any thing to leave to the jury, they could not have hesitated a moment about their verdict.  But I think the plaintiffs should have been nonsuited.

The CHIEF JUSTICE concurred on both points.

COWEN, J., only concurred in the opinion that the question of presumption of a grant should have been submitted to the jury.

New trial granted.