The Vice-Chancellor.
The bill when filed, prayed for an injunction to restrain the defendants from further proceeding in the erection of their building, which had then been commenced, on that part of lot number four Spruce Street, which was in the rear of the complainants lot No. 144 Nassau street. An injunction was issued, in substance according to the prayer of the hill. The building which the defendants were erecting, extended over about nineteen feet of that part of the Spruce street lot lying in the rear of 144 Nassau street, and left a space at the rear of the Spruce street lot about four feet in depth on the west and about six feet deep on the east side of that lot, which was not occupied by any building. This space, butted against the complainants lot, and extended across the Spruce street lot, about twenty-three feet.
The late vice-chancellor, on the coming in of the answer, dissolved the injunction. His decision is conclusive between the parties in this branch of the court, on any application on the same state of facts, (or on a new state of facts, except upon leave first had to apply anew,) for a revival of the injunction which he dissolved. But it did not conclude him, nor does it conclude any judge, from holding at the final hearing of the cause, on the same facts, that the complainants are entitled to the relief which they seek by their bill, by a perpetual injunction, or otherwise.
An order of the court made upon a motion, is not res adjudi■* *463 cata, in any other sense than that which I have stated. It does not conclude the court as to points of law involved in its decision, whether arising in the same case or in another.
In this instance, although the complainants in terms ask to restore the injunction : the papers on which they move, in connection with the notice, show that such is not the object intended, The motion is to restrain an erection, which was not commenced or contemplated when the injunction was issued or when it was dissolved, and which forms no part of the edifice against the erection of which the injunction proceeded.
The matter now presented, therefore, was not before the late vice-chancellor. He decided on the bill and answer, that the defendants ought not to be restrained from building the edifice which they had commenced. He did not decide that they should be permitted to build up the dead brick wall now in question, from the southwest corner of their building on the Spruce street lot, to the rear of that lot, so as to shut out what little of air and light that edifice had left to the complainants.
So far as legal principles, or conclusions as to matters of fact, were involved in the decision of my predecessor, on the motion to dissolve the injunction ; they will be treated with the high respect and consideration to which the decisions of a judge of his ability and experience are justly entitled. And except upon clear and imperative convictions that he erred, I shall feel impelled to be governed by his conclusions. But to say that I am to follow them implicitly, whether right or wrong, is a position to which I cannot assent.
Examining the question before me with these views, the first point presented, is the agreement or understanding between the parties, as alleged in the bill, at the time the Spruce street lot was purchased, and the cotemporary proceedings, on which the complainants claim a right to the portion of it situated in their rear. Without analysing the conflicting statements on this subject, it suffices to say that I do not perceive any good reason for differing from the late vice-chancellor in his view that the answer meets and denies the equity of the bill.
*464 ■ The next question is the more difficult one of the complainants right to light and air from the Spruee street lot, claimed from its uninterrupted enjoyment for a sufficient length of time to ripen into a prescriptive title.
It is insisted hy the defendants, that according to the established law in this state, no such right can be acquired by lapse of time. That such enjoyment of light and air, is not adverse or hostile to any right of the owner of the adjoining land, and cannot become the foundation of a presumption of right to continue their use as against such owner.
In Parker v. Foote, 19 Wend. 309, this doctrine was held by Judges Bronson and Nelson, (Judge Cowen not concurring ;) and is probably to be deemed the decision of the court, although it was made only for the purposes of a new trial which was previously directed on another point.
Chief Justice Savage, a few years before, in Mahan v. Brown, 13 Wend. 263, esteemed the contrary to be too well settled to require any discussion ; but he did not decide the point.
Concurring with his opinion, is that of Chancellor Pennington, in New Jersey, as emphatically declared in Robeson v. Pittinger, 1 Green’s Ch. R. 57, 64. And in the court of appeals of South Carolina, it has been decided by a united court, that by the common law, the receiving of light and air through one’s windows over the soil of another, is an easement, which by twenty years enjoyment, becomes a right which cannot be disturbed ; and that there was nothing in the institutions or the condition of this country, inconsistent with the application of the common law doctrine on that subject. I apprehend that the doctrine relative to ancient lights now prevailing in England, is not a modern one; and that it is a great error to attribute its introduction to the ruling of Chief Justice Wilmot in 1761.
The dissolution of the injunction in this cause by my predecessor, may be deemed a decision against the complainants on this point. It is a question of vast importance ; one which I have no desire to encounter; and with that decision, as well as the opinion of the supreme court in Parker v. Foote, in favor of the defendants ; I am persuaded it is not my duty to examine the question upon this interlocutory application. Whether it be an *465 open question, I express no opinion; still less do I mean to be understood as intimating a bias upon it either one way or the other.
I now come to the circumstances which have occurred, since the filing of the bill, on which, independent of the grounds therein stated, the complainants seek to restrain the erection of the new brick wall, or partition fence.
In answer to a charge in the bill, that the defendants were building on the entire rear of their Spruce street lot, they denied the statement, and set forth that they were leaving a yard at the rear, the whole width of that lot, six feet deep on the east side, and four feet on the west, the situation of which would be seen by reference to a diagram annexed to the answer. This diagram exhibits the outline of the respective lots owned by both parties ; the yard in question, bounding on the west by the complainants line and its south line corresponding with the south line of their store ; the complainants yard, fourteen feet and one inch wide, by an average of four feet deep, shut in by the wall of the dedefendants building; and the outline of the complainants store, represented on the diagram as coming to the defendant’s west line, for a distance of eight feet and ten inches, at the south west corner of the Spruce street lot, and thus bounded four feet by the yard they were leaving in the rear of the lot.
In point of fact, that part of the complainants building, 8 feet 10 inches wide, and projecting from the rear of their store, as exhibited on the diagram, was a four story brick privy, connecting with their store in each story; so that the store derived no light from the rear of that projection.
The affidavits show some difference in the recollection of those who were present, as to what occurred on the motion to dissolve the injunction. The principal facts are stated positively by three persons, and are corroborated by a minute made by one of the counsel at the time, as well as by the reference to the diagram. The affidavits on the other side, show merely that the two gentlemen who were present, do not remember, what the others swear they do remember; so that there is really no *466 contradiction. The reference to the diagram, and the portion of the answer accompanying it, is recollected by all.
There was no conceivable object in thus referring to those documents, unless to show to the court, that the complainants would still have an open space in their rear, over the defendants lot.
The fact and the argument, had no bearing whatever on the two great points on which the injunction was to stand or fall, the alleged agreement, and the right to the use of light and air over the Spruce street lot; but they were addressed to the conscience and the sympathy of the court, in answer to an apparent case of injury and hardship.
I have no difficulty, therefore, in my conclusion as to what took place on the argument of the motion to dissolve the injunction, and it is this :
The counsel for the defendants referred to the answer and the diagram, and pointed out to the court, that the defendants, as well for the complainants accommodation as their own, had left the vacant space or yard at the rear of the Spruce street lot; from which the complainants might, at all times, derive the use of light and air for their store. And in reply to the suggestion of the complainants counsel, that the dead wall of their store, bounded upon such open space or yard, the defendants counsel stated to the court, that the dead wall was merely the wall of the complainants privy, which they might take down if they wished to have the use of the light and air from the defendants lot; and if they suffered the privies to remain, instead of having the light, it was not the defendant’s fault. All this took place in the face of the court, and in the presence of the defendants corresponding secretary, who verified their answer, and appears to have been their principal executive officer or manager, for at least eleven years past. It was the unquestioned act of their counsel, acquiesced in by their manager, and corrobo-, rated by their answer in the cause.
The complainants, in full confidence that these statements were not only true and authoritative, but that they were proffered in entire fairness and good faith; at once set about admitting the light to the rear of their store, which the five story *467 wall of the defendants edifice was daily and hourly excluding, as it advanced in height. They took down and removed their privy from the south east corner of their store, making a straight line of their east wall, and turning into a yard, the space beyond that line which, on the diagram annexed to the answer, is represented as covereredby their building. And in the space in their rear wall, which the privy had covered, they proceeded to insert large windows, one in each story, prepared with iron sills and lintels, as well as iron frames, and secured without, by fire proof iron shutters.
While the insertion of these windows was progressing, they were notified, on behalf of the defendants, that if they persisted in putting in the same, the latter would erect a brick wall from the south west angle of their building on the Spruce street lot, running south on their west line to the south line of their lot, and carry it up to the height of their main building. The complainants continued the work of inserting the windows, and the defendants commenced building the brick wall which is now in question.
As to the morality of this transaction on the part of the defendants, to which much of the argument was addressed; it is not my province to determine, or even to comment upon, its character. I am to deal with the rights of the parties according to law, and shall endeavor to discharge that duty without being swayed either to the one side or the other, by* the vehement arguments of the respective counsel in relation to the conduct of their opponents.
it is a general principle, both at law and in equity, that when a party, by his declaration or his conduct, has induced another tp act in 9. particular manner, which he would not otherwise have done ; such party will not afterwards be permitted to set up a claim inconsistent with such declaration or conduct, if such claim will work an injury to the other party, or to those claiming under him. (See Welland Canal Company v. Hathaway, 8 Wend. 483, per Nelson, J.; Dezell v. Odell, 3 Hill, 221, per Bronson, J.)
If Judge Bronson be correct in his opinion, in Parker v. Foote, before cited, that the use of light and air through win *468 dows in a house overlooking the adjacent land of another, is not an easement, or a privilege enjoyed adversely to the rights of the .owner of such land; there would be no difficulty in applying the principle just stated, to this case. For in that view, the defendant’s declaration and conduct, upon which the complainants acted, would not confer an interest or right in the lands of the former, and would not be open to any objection, because it was not in writing. As I have forborne to pass upon the very important question involved in that opinion of the learned judge, respecting the acquisition of a right to light and air over a neigffi bor’s land, by lapse of time ; I will, for the present, waive this apparent corollary from his conclusion in that case.
As a mere license, the complainants cannot be sustained in their claim to stay the erection of the wall. In Wolfe v. Frost, September 1, 1846, which was before me, as assistant vice-chancellor(a) I held, that a license is an authority to do a particular act, or series of acts, upon another’s land, without possessing any estate therein ; whereas, a claim for an easement, is a permanent interest in another’s land. A license, when executed, will prevent the owner of the land from maintaining case or trespass for the acts done under it; but it is revocable at pleasure, and will not be a defence to any act done after it is revoked. And although the party licensed, may have expended money on his own land, solely on the faith of the license, that circumstance does not prevent the party granting it, from revoking it at pleasure, without ipaking any compensation for such expenditure.
The result of an earnest, and I may well add, anxious consideration of this case, is that I ought not to interfere on either of the grounds heretofore discussed; but that I am bound to grant a preliminary injunction, upon the proceedings which took place jn this court, when the injunction against the rear of the main building of the defendants was dissolved.
The defendants declarations on that occasion, were intended to have weight with the court, on the pending motion. They Were a solemn statement, equivalent to a promise or engage *469 ment, made to the court and the adverse party, that the latter might if they would, avail themselves of the light and air, over the open space left in the rear of the defendants Spruce street lot; and that such space had been left for the mutual accommodation of both parties in respect of light and air.
I have no reason to doubt that the statement was made in entire good faith. It will not answer for the defendants to assert now, that thoir counsel were not authorized to make such a statement or engagement, after permitting it to go before the court, not merely undisputed and unquestioned by their executive officer who was present, but actually sustained and warranted, to all appearance, by the defendants answer in the cause, and the diagram annexed.
They have been induced to deviate from the undertaking then made, and their ground for so doing, as stated by them, is their apprehension of danger to their own building and its contents, from any fire which may occur in the complainants store ; the large windows which the latter are opening, greatly increasing the defendants risk from that source, as they are advised. Whether this apprehension be well or ill founded, it is not for me to say ; nor do I deem it material.
In my view, the statements and representations made to the court and to the complainants, on the argument of the former motion, are to be regarded as a contract with the court, as well as the latter ; and that it stands on the same footing as any stipulation or engagement made by a party, in facie curiae, touching the subject matter of the litigation, which the court is bound to enforce. It should be carried into effect, precisely as the court would enforce a promise of a party that he would not commit waste on mortgaged premises, made pending a motion for an im junction or receiver.
Another illustration of the action of the court in a parallel case, is found in its enforcing parol engagements made by solicv itors and counsel, relative to the conduct of a suit or its proceedings, when made in open court or before a master; although a standing rule of the court requires that all such agreements shall be in writing, in order to be valid.
That it is right and equitable to enforce the engagement in *470 question, there can be no doubt. The complainants have acted upon it, in full confidence of its being well intended, as well as valid. They have incurred heavy expenditures, and made essential alterations in their building, solely relying upon the proffered benefit. And there should be some more potent reason for suffering the defendants to retract their engagement under such circumstances, than the one presented in the opposing affidavits.
On the ground of the undertaking made to and with the court, it is clearly my duty to restrain the erection of this wall, in direct contravention of that undertaking.
As a contract with the complainants, it appears to me capable of being enforced. In effect, the defendants agreed that if the complainants would remove their four story privy, and insert windows in the rear of their store instead, they might have the use of light and air through such windows, over the open space left by the defendants in the rear of their Spruce street lot.
Now whether this would benefit the defendants, by withdrawing the privy, and enlarging the side space adjacent to their southwest windows in their rear, or was not likely to produce any advantage to them, is not important. The labor, expense and temporary inconvenience of the removal of the privy, and inserting the windows, furnished a sufficient consideration on the part of the complainants. As a parol agreement, it may be said to be void by the statute of frauds ; but having been executed by the complainants, and having relation to real estate, this court would enforce it in the exercise of its ordinary jurisdiction, especially when made under such circumstances.
These conclusions, concurring with the sound and just principle heretofore mentioned1 as applicable to acts induced by the declarations and conduct of another, induce me to grant the complainants motion, without entering at all into the critical consideration of the important points which were before the court, on the motion to dissolve the injunction.
Motion granted, and an injunction to be issued accordingly»

 Ante, page 73.