*316 The opinion of the Court was delivered by
Waedlaw, J.
The verdict excludes from our consideration in this case, the rights concerning light and air which may be established between subsequent owners, by the disposition of a former owner of two tenements. It has also ascertained that-there was nothing in the mode of connexion between the two houses of plaintiff and defendant, which showed the assent of the defendant to the plaintiff’s acquisition -of the easement now here urged : and that of that assent there is no evidence, nor ground of presumption, besides the plaintiff’s enjoyment for more than twenty years unobstructed by the defendant. The real question is, whether that is sufficient evidence; or, in other words, whether, from the unobstructed enjoyment for so long a time, the assent should be presumed.
I' It might seem, from the grounds of appeal, that there was disagreement concerning the necessity of adverse character in the possession which raises the presumption of right to an easement, and concerning the theory upon which such presumption proceeds. But on all sides, it is agreed that the possession or enjoyment must be adverse, that is as of right and not of favor: and that where the right is established by presumption arising from possession, the presumption is of a grant, covenant, or other proper legal assurance of the right, necessarily implying the origin of the possession in consent, and its continuance with the assent of the party who is to receive damage from the establishment of the right, or in spite of his opposition. (a) It is not questioned that in the case of any easement, which if not rightful, gives c.ause of action to the owner of the servient estate, enjoyment for twenty years without action by him is evidence of his assent, and that, if nothing to the contrary appears, the enjoyment must be taken to have been with his acquiescence in the right. Does the easement of receiving light and air through an ancient window stand upon the same footing? )
It is argued that the plaintiff’s opening, upon his own land, a window which looked upon the land of the defendant, his *317 neighbour, was no encroachment upon the defendant, and could have given to him no cause of action : the defendant says that his assent to a right in derogation of rights not at all trespassed upon or impaired, cannot then be inferred from the continuance of the window: the plaintiff replies that the defendant might, if he did not assent to the plaintiff’s acquisition of a right to have the window ever afterwards unobstructed, have erected a wall or otherwise have obstructed the window, and that from his neglect to do so, his assent may be inferred. The dispute, then, is concerning the duty of the defendant to make the obstruction. Does the same inference arise from his omission to obstruct what was doing him no harm, as from his neglect to sue for what was a continuing trespass, if it was not rightful ?
A resort to the law for redress is usually demanded by a just regard for the peace of society, and is encouraged by the theory that justice is dispensed at the cost of the wrong doer. ' He who omits, for a long time, to take the usual, well known and theoretically unexpensive means of arresting acts, which, if wrongful and doing him injury, thp law affords, may well be supposed to refrain because he knows that the acts are rightful. (c) Bat it is a different thing, when one’s assent to a perpetual right that may seriously interfere with his dominion over his own property, is to be inferred from his neglect to hinder what was no legal wrong to him, caused him no inconvenience, and contributed to the pleasure of a neighbour. ( d) The window may have been high and a'wall would have been expensive: but the principle of the matter cannot depend upon the more or less expense of the obstruction. A very low and very narrow window might have been obstructed by a board; it may look to the east, and may have admitted the morning sunshine for some useful art to which such sunshine is necessary: a building of great height within fifty feet of it may exclude the sunshine :— shall the neighbour’s neglect to put up the board be evidence, now that twenty years have passed since the window was *318 opened, that he assented to the right of its remaining unobstructed, so that his lofty building must come down 1
The owner’s dominion over property should be subject to no controul or restraint not required by considerations of justice or public expediency. He who owns the ground overlooked by a window, may desire that it should remain unoccupied, and why should another have the right to compel him to forego his desire ? The very space which a board would occupy, he may wish to be free for light and air, and what harm does the indulgence of his whim do to the owner of the window 1 Both do as they please with their own — neither encroaches on the other. Both understand that any accidental advantages which one derives from the other’s property may be cut off at pleasure by that other: and as the owner of the vacant space would not be allowed to acquire the easement of having the window kept open, upon the ground, that for twenty years the immission of light and air from his space into it had been acquiesced in: so neither should the easement to have the window unobstructed be acquired on the other hand by mere enjoyment for the same time, upon the ground, that acquiescence in the right to receive light and air from the space is thence to be presumed.— Where no other evidence of assent is given, the fair inference from unobstructed enjoyment of such a window is, that there was acquiesence in a favor but not in a right; that the obstruction was forborne not because an easement had been granted, or the acquisition of one was thought of, but because, to the owner of the space, it was immaterial to what use another might turn the elements that had passed through his space and served his purpose. Ho was unwilling to alter the disposition of his property, merely to do an unneighbourly act, confident that his dominion over it remained subject to his own discretion. In this view, the enjoyment of the window could not have been'ad verse, and so could not have raised the presumption of any right. Where nothing besides the unobstructed enjoyment appears to sustain the right, he who complains of his window being darkened by the alterations of his neighboui’s property, may well be *319 told that these he should have anticipated: as was said, in Bury vs. Pope, (Cro. Eliz. 118,) it was his folly so to build — he chose to run the risk.
The instructions which were given to the jury, seem to contemplate the assertion of right, on the side of him who owned the window, as a circumstance which might shew the adverse nature of his enjoyment. Such assertion without denial on the other side, might be evidence of assent to the right asserted: — but a positive denial opposed to a distinct assertion would seem to bring the case back to the original question, whether the right to obstruct is sufficient evidence of assent to the right.
The point in this case has been discussed with boldness and ability in the case of Parker vs. Foote, (19 Wend. 309,) and to the opinion of Judge Bronson in that case, we refer for much learning and many forcible remarks which we will not repeat. We undertake not to decide what was the ancient common law on this subject of windows. The case of Bury vs. Pope we have already referred to: it occurred before the statute of 21 Jac. I fixed the period of twenty years for limitation of posses-sory actions, and probably had reference to windows which neither by prescription, nor by any presumption analogous to the statute of limitations then prevailing, could be considered ancient. The dicta of Sir Edward Coke in Aldred’s case. (9 Rep. 58,) supported by the cases he has cited, shew that, at a much earlier day, an action would lie for obstructing ancient lights.
Many modem decisions (in the course of which the doctrine of presumptions as distinguished from prescription, has been carefully sifted and applied to easements as well as to many other rights, e) have fully established in England the following propositions: — The strict right of property entitles the owner to so much light and air only as falls perpendicularly on his' land. He may build to the very extremity of his own land, and no action can be maintained against him for disturbing his neighbour’s privacy, by opening windows which oyerlook the *320 adjoining property ■: but it is competent to such neighbour to obstruct the windows so opened by building against them on his own land, at any time during twenty years after their construction, and thus prevent the acquisition of the easement: if, however, that period is once suffered to elapse, his .long acquiescence becomes evidence, as in the case of other easements, of a title by the assent of the party whose land is subject to it.” (f)
To measure the extent of the easement thus acquired, no rule more certain than the verdict of a jury seems yet to have been adopted in England. Attention to some of the cases, there decided, gives great force to the arguments ab inconvenienti which have been urged against our admitting the presumption of assent which we are considering. In Cross vs. Lewis, (2 B. & C. 686), the plaintiff’s house was four feet from a wall, which constituted his boundary : his windows on that side were unobstructed for thirty years, in the absence of those under whom the defendant claimed; the defendant built on his side, within one foot of the wall, five feet from the plaintiff’s windows: the distinction between the case of a window and those easements which could not be enjoyed without a trespass, if there was not a right, was noticed, but it was held that the defendant’s only remedy, to prevent the acquisition of an easement by the plaintiff, was to have obstructed the windows, and that under the circumstances, the plaintiff’s right required that the building which darkened his windows should be removed. In Back vs. Stacey, (2 C. & P. 465,) Best, C. J. at nisi prius directed the jury that it was not sufficient for the plaintiff to shew merely that there was less light; there must be such a substantial privation of light, as to render the house uncomfortable, and to prevent the plaintiff from carrying on his accustomed business in it, as beneficially as before he had done : it might be difficult to draw the line, but the jury must distinguish between a partial inconvenience and a real injury to the plaintiff in his enjoyment of the premises. In Parker vs. Smith, (5 C. & P. 438,) Tindal, C. J. distinguished between a speculative exclusion of light, *321 and such diminution of it as really makes the premises, to a sensible degree, less fit for the business done in them. If there was such diminution of light and air, he directed a verdict for the plaintiff of nominal damages, which would, he said, be notice to the defendant that he must pull down the building complained of. In Pringle vs. Wernham, (7 C. & P. 377) the defendant’s building was twenty-three and a half feet from the plaintiff’s. Lord Denman said, the merely taking off a ray or two of light was not sufficient; there must be a considerable obstruction. The verdict was for the plaintiff the amount of the damages in the declaration, to be reduced to one shilling upon his altering his building to the satisfaction of a referee. In Wells vs. Ody, (7 C. & P. 410) the obstruction was by reason of a wall raised in height, which was seven, feet nine inches from plaintiff’s house: the question submitted was, whether there was such a diminution of light as sensibly to diminish the value of the premises, and verdict wTas rendered for the plaintiff.
It will be seen how seriously improvements might be here hindered, by our deducing a proprietor’s assent to a right, which would be a perpetual restraint upon his dominion over his own, from his neglect to obstruct windows for a time which would seem short to his retrospect, during all of which he had no occasion to occupy the space upon which they looked. The extent of the right, after all the precision had heen given to it which results from the finding of a jury upon a question of value, would depend much upon the lowness of the windows and the nature of the business which they were accustomed to serve, circumstances which might subject valuable building ground to the extortionate demands, or ill natured controul, of the owner of an adjoining hovel.
For a proper appreciation of the authority which should be given to the late English decisions on this subject, it should be noted that, under the 2d and 7th sections of the statute of 2 & 3 W. IY, c. 71, (Lord Tenterden’s Act), a plea that any easement there mentioned had been enjoyed for twenty years, must state that the enjoyment was had “ as of rightbut under the *322 third section, it is enacted, that where the access of light to a dwelling house shall have been enjoyed therewith for twenty years without interruption, the right shall be deemed absolute and indefeasible, notwithstanding any local custom. This 3d section, it has been decided, extends to London, where custom had previously authorized one to obstruct another’s ancient lights by building on an ancient foundation (g): and in a case where the enjoyment of windows commenced under permission verbally asked for, it was held that the 3d section did not require the enjoyment to be of right or adverse (h). It cannot but be supposed that this statute has largely influenced all the decisions concerning windows which have been made in England since it passed.
With us, the necessity of obstructing windows to prevent the acquisition of an easement has not been established.The case of McCready vs. Thomson, (Dud. 131) which, by the general terms used in the decision, may seem to have recognized the English doctrine, was but the refusal to set aside a verdict, and the facts of the case, as they are reported, shew that the jury may have found evidence of the defendant’s assent to the plaintiff’s right in the long continued accommodation of the defendant’s buildings to the plaintiff’s enjoyment. We have, in reference to the evidence which may serve to shew adverse character in the use of a way over another’s land, introduced a distinction between forest land unenclosed and cultivated land, a distinction which was required by the old principles of the rule concerning presumptions, when the rule came to be applied under new circumstances. In like manner, the wider spaces and more rapid changes of our country, with the less jealous habits of our people, without any the less lofty notions of proprietary rights, make it proper that, under the principle which requires the assent of him who is to suffer from this establishment of a right, to be shewn before his grant of it shall be presumed, a different rule of evidence concerning assent to the easement of having win *323 dows unobstructed, involving a different notion of the duty to obstruct the windows for prevention of the right, should prevail here, from that which obtains where lands are more fully occupied and of more steady value, and where every encroachment upon them, even potential, is more carefully watched.
The case of windows is, as we have seen, now made peculiar in England by statute: but the general principle, which before that statute prevailed there as to all easements, and since has prevailed as to all with the exception of windows, is, that | the enjoyment must be adverse or of right to raise by twenty years continuance the presumption of a grant. There are, besides windows, very few instances of advantages enjoyed from* a neighbour’s land of the kind which if not rightful give him no cause of action, that have ever been supposed to ripen by' time into indefeasible easements. Such instances have, however, been sometimes considered in England : there may be dispute as to what are considered ancient, and as to the rights which would be accorded to ancient possessions, but in no case, besides that of windows, has a proprietor ever been required to do what he did not please to do with his own, to prevent another from acquiring a right therein. The distinction of windows from other cases, has, independent of the statute, rested on the ground , that, as to thorn, a proprietor had, in his own hands, the means of obstruction more cheap and easy than in other cases.
The necessary support which is given by the soil' of one owner to the soil of another, is regarded as a natural right, — an incident of property, rather than an easement (i). But where the lateral pressure of the soil of one has been increased by super-incumbent buildings that have stood, for twenty years, the question as to the right of the other to make an excavation on his own soil, which would not have disturbed the natural condition of the adjoining soil, but would injure the buildings that have increased the pressure, has several times been presented. A ruling of Lord Ellenborough at nisi prms, (k) and an observa *324 tion of Liltledale, J. made in the course of an argument, (l) seem to maintain that mere lapse of time within the memory of man, without any other evidence of assent on the part of him against whom a right was claimed, produced, by force of presumption, a state of things like their natural or prescriptive state, which made rightful what had long existed: but on several occasions (m) a bench of Judges carefully abstained from confirming this doctrine. Where the enjoyment was in its nature ¡hidden, or although it was apparent, there was no ready means of resisting it within the power of the servient owner, assent was not implied, and the influence of twenty years time, therefore, not acknowledged.
In reference to the support given by one building to another, cases have arisen concerning the relative duties of the parties to provide shores, when the supporting building is to be removed, and concerning negligence in the removal, (n) but it has not been decided that, when a building has tottered and rested upon a neighbour’s building which stands perpendicular on his line, doing him no harm, and giving him neither right of action, nor right to enter for its removal, the continuance of this condition of things for twenty years shall prevent the neighbour from taking down his wall, although thereby the supported building must be made to fall.
He who has, by a steam engine, raised a stream of water, which after- serving his uses, has flowed, according to a right acquired by time, over the land of a neighbour who has applied it to turn a mill, is not held bound after twenty years to keep up his engine against his will for the benefit of his.neigh-bour ( o ). It is considered to be immaterial to him, what use the neighbour makes of that, which he himself originated and continued for his own benefit: and distinctions are taken between doing and suffering, and between the dominant and *325 the servient estates. Under these distinctions an easement would be denied to one who should urge against a neighbour’s pulling down his own wall, a right to the shelter of the wall, on the ground that, with the knowledge of the neighbour he had enjoyed it more than twenty years: and the same distinctions would prevent the acquisition of an easement in the shade of a tree which stands on a neighbour’s land near his boundary, or of an easement to have continued the protection against winds which a neighbour’s forest or a hill on his land had long afforded to another’s orchard.
With us, cattle may roam upon unenclosed land without trespassing upon the owner of the land. Why should not a neigh-bour by twenty years continuous use of such land by his cattle acquire against the owner of the land the right of pasturage ? The neglect to enclose might be taken as evidence of the owner’s assent to the right, for in some instances enclosing would not be more expensive than the erection of a wall to obstruct a high window. The answer is to be found in the general principles which we think applicable as well to the window as the cattle. Every proprietor is permitted to use his own at his own pleasure, provided, that no one else is thereby injured: an incidental advantage which another derives from his land, if it does him no legal wrong, gives him no cause of action; it should not then constrain him to alter little or much his pleasure in the use of his own, and the enjoyment of it should not, of itself, be evidence of his assent to any right acquired in derogation of his proprietary dominion. >
The motion is dismissed.
O’Neall, EvaNs, Frost and Withers, JJ. concurred.
Whitner, J. heard the case and assented to the result, but was absent when the opinion was pronounced.

Motion dismissed.

(a) Campbell vs. Wilson, 3 East, 294.

(c) See 1 Wms. Saund. 346, b.

(d) Mason vs. Hill, 5 B. & Ad. 1.

(e) 2 Saund. 175, n. 2.

(f) Gale & "W. on Easem. 191.

(g) 3 Ad. & El. N. S. Ill; 2 Gate & What. 414.

(A) London Mayor vs. Pewterer’s Company, 2 M. & R. 407.

(i) Gale & W. on Easem. 216.

(k) Stansell vs. Jollard, 1 Selw. N. P. 441.

(l) Dodd vs. Holme, 1 Ad. & Ell. 493, 3 Nev. & M. 739.

(m) Wyatt vs. Harrison, 3 B. & Ad. 871; Dodd vs. Holme, supra; Partrige vs. Scott, 3 Mees. & W. 220; Gale & W. on Easem. 219, 227, 253.

(n) Peyton vs. Mayor of London, 9 B. & C. 725; Gale & W. on Easem. ch. 6, § 3, 4.

(o) Arkwright vs. Gell, 5 Mees. & W. 203; Gale & W. on Easem. 182.