AMERICAN BANK-NOTE CO. *v.* NEW YORK EL. R. CO. *et al.*

(*Superior Court of New York City, General Term.* March 3, 1891.)

1. ELEVATED RAILROADS—USE OF STREETS—PRESCRIPTION RIGHTS.
   The New York Elevated Railroad Company and its predecessors in title having acquired the right to construct and operate its railroad in Greenwich street, in New York city, under lawful warrant from the public authorities, on condition that compensation be made to abutting owners, its enjoyment of any part of the street was not adverse to the abutting owners, but under a license, and an entry thereunder must be presumed to have been in subordination to their rights. Hence a right by prescription cannot be based upon such occupation and user.

2. SAME—RIGHTS OF ABUTTING OWNERS—EQUITABLE RELIEF.
   The use by an elevated railroad of the easement in the street of an abutting owner, whose rights have not been acquired by purchase or condemnation, is unlawful, and the abutting owner has the right to equitable relief against the mere operation of the road resulting in any injury to such owner.

3. SAME—PURCHASE OF ABUTTING PROPERTY.
   The fact that plaintiff purchased abutting property, and erected buildings thereon, after the construction and operation of defendant's elevated road in the street, if before condemnation of his right of easement therein, will not prevent his recovery of damages to the same extent as if he had built prior to the construction of

the road, if he takes proper care to avoid any annoyance from the existence and operation of the road.

**4. SAME—CORPORATION AS ABUTTING OWNER—DAMAGES.**

The rule of damages in an action by an abutting owner against an elevated railroad company, which has constructed and operated its road in the street, which allows the loss of rental value, is inapplicable to the case of a corporation owner in occupancy, for a corporation cannot be subjected to personal inconvenience and discomfort, and the recovery in such case can only be had for additional expense incurred.

Appeal from special term.

The American Bank-Note Company sued the New York Elevated Railroad Company and others for damages to its easement by the operation of the road. Judgment for plaintiff, and defendants appeal.

Argued before SEDGWICK, C. J., and FREEDMAN and INGRAHAM, JJ.

*Edward C. James,* for appellants.   *Peckham & Tyler,* for respondent.

FREEDMAN, J.   This is an appeal from a judgment of the special term for injunctive relief, damages, and costs.   The action was brought for equitable relief against the maintenance and operation of an elevated railroad in front of plaintiff's premises, consisting of Nos. 115 to 123 Greenwich street.   The defendants insist that, prior to the commencement of the action in 1888, they had gained a right by prescription to maintain and operate their elevated railroad in front of plaintiff's premises.   The West Side & Yonkers Patent Railway Company, to whose rights the defendants have succeeded, constructed its elevated railroad in Greenwich street and in front of the premises in question prior to July 1, 1868.   The said railroad was a single-track road, consisting of an iron superstructure and cross-ties supported upon iron columns set on the curb-stone line on the east side of Greenwich street, and operated by a cable.   The said railroad was put in operation July 2, 1868, and its operation since that time underwent the following changes, viz.: April 20, 1871, steam dummies were substituted for cable power to draw the trains. April 20, 1871, to April 5, 1877, turn-outs were built at different periods. October, 1877, to June 1878, the west side track was built.   June 2, 1878, the west side track was put in operation.   Fall of 1879 to May 2, 1880, the east track was reconstructed.   Since June 2, 1878, the railroad has been operated by means of trains drawn by steam-engines down one track and up the other, with the exception of the use of temporary turn-outs during the period of reconstructing the east track.   These facts being clearly insufficient to establish a user of the entire system for more than 20 years, the defendants have confined their claim of right by prescription to the east track and the structure upon which it rests.   As to those it is claimed that, notwithstanding the changes they have undergone, they have been maintained substantially and sufficiently continuously for more than 20 years before the commencement of the action; that thereby the defendant acquired the right to maintain them by prescription against the plaintiff; that, the right to maintain the structure and the track having been acquired, they can operate the road in any manner or by any method authorized by the legislature; and that, therefore, it can make no difference that the road was operated by a cable until 1871, and that then steam-engines were substituted.   A thorough analysis of the details of this claim, if it were necessary that it should be made, would give rise to quite a number of interesting questions upon which much has been said and written; but I do not deem it necessary.   The answer to the entire claim is that the defendants could not acquire a right by prescription, as claimed.   Originally the theory of prescriptions was that the right claimed must have been enjoyed beyond the period of the memory of man, which, for a long time in England, went back to the time of Richard I.   But, to obviate the necessity of such an impossible proof, it became customary to rely upon the presumption of a deed having been given, and of its having

been lost, after showing an enjoyment for a sufficient length of time. The matter is regulated in England now by statute. In the United States grants of incorporeal hereditaments are presumed, upon proof of an adverse enjoyment which has been exclusive and uninterrupted for 20 years, or the period of time fixed by the respective statutes of the several states as the limitation in respect to lands themselves. In the state of New York the limitation is 20 years; but to authorize the presumption of a grant the enjoyment must not only have been uninterrupted for the period of 20 years, but it must have been adverse, not by leave or favor, but under a claim and assertion of right, and with the knowledge and acquiescence of the owner. *Parker* v. *Foote*, 19 Wend. 309. The defendants have lawful warrant from the public authorities to construct, and they have lawful warrant from the public authorities to maintain and operate, their elevated railroad in and through Greenwich street, but only on condition that compensation be made to abutting owners. This proposition has been affirmed so many times that its verification by the citation of authorities would be a work of supererogation. The enjoyment by the defendants of so much of the street in question as they did take in front of plaintiff's premises, was therefore not adverse to the plaintiff and its predecessors in title, but under a license from the public authorities on condition that compensation be made; and the entry under this license must therefore be presumed to have been in subordination to the rights of the abutting owners. Upon this branch of the case the decision in *Broiestedt* v. *Railroad Co.*, 55 N. Y. 220, is directly in point. The defendants, therefore, can no more sustain their claim of adverse enjoyment than a purchaser under a municipal tax lease can sustain a claim of adverse possession. As to the latter, it is well settled that possession and claim under a municipal tax lease for over 20 years is not adverse to the claim of the owner in fee. *Bedell* v. *Shaw*, 59 N. Y. 46. The claim of the defendants to a right by prescription is, therefore, untenable, and, that being so, no acquiescence by the plaintiff and its predecessors in title, not constituting an equitable estoppel as defined by the general term of the supreme court in the recent case of *Knox* v. *Railway Co.*, 12 N. Y. Supp. 848, will bar the action. The evidence in this case wholly fails to establish such an estoppel. Equally untenable is the claim of the defendants that the right of a plaintiff as an abutting owner to equitable relief against an elevated railroad arises not from its operation, but solely from its unlawful appropriation of the street to the construction and maintenance of its structure. It is difficult to perceive how a legal right can exist to use an illegal structure to its utmost capacity. Even a steam surface railroad, lawfully in existence and operation, may in fact be operated to an extent going so much beyond the ordinary and legitimate uses of the street as to involve an abridgment of the abutting owner's easement in the street, and to entitle him to a corresponding compensation. *Greene* v. *Railroad Co.*, 65 How. Pr. 154. It is only when a steam surface railroad, having lawful public authority for the purpose, makes a reasonable use of a street for railroad purposes, without substantially changing its grade, so that the use is not exclusive in its nature, but leaves the passage across and through the street substantially free and unobstructed for the public use, that an abutting owner has no cause of action, and that is all that was decided in *Fobes* v. *Railroad Co.*, 121 N. Y. 505, 24 N. E. Rep. 919. As to the effects produced by the operation of an elevated railroad upon abutting property the following is the latest position taken by the court of appeals. The precise question under consideration was the question of noise, but the remarks of ANDREWS, J., who delivered the opinion of the court on that occasion, and in which all concurred except EARL, J., apply with equal force to every element of damage caused by an inconsistent and illegal street use. Judge ANDREWS says in *Kane* v. *Railroad Co.*, 26 N. E. Rep. 278, 282: "The court allowed the jury to consider the noise created by the trains of the defendant as an element of damage. If the defendant had

the lawful right to operate its trains in the street, such inconvenience as might result to the plaintiff in the enjoyment of his property from the ordinary and usual operation of the defendant's road would not, in the absence of negligence on its part, furnish a ground of action. But we held in the *Lahr Case,* (10 N. E. Rep. 528,) that, as to abutting owners having easements in the streets through which the road was constructed, whose rights had not been acquired by condemnation, the defendant was a trespasser. Upon general principles, therefore, it would seem that any consequential injury to the plaintiff's property from the acts of the defendant while engaged in the unauthorized occupation and use of the street was proper to be considered by the jury. In the *Lahr Case,* Chief Judge RUGER, referring to this point, said: 'No partial justification of the damage inflicted by an unlawful structure and its unlawful use can be predicated upon the circumstance that under other conditions, and through a lawful exercise of authority, some of the consequences complained of might have been produced without rendering their perpetrator liable for damages.' See, also, opinion of FINCH, J., *Drucker's Case,* 106 N. Y. 158, 12 N. E. Rep. 568."

The next point raised by the defendants is that the plaintiff should not have any equitable relief, because it voluntarily erected the building upon the premises in suit in the manner it did, after the construction and the commencement of the operation of the elevated railroad. The plaintiff has been for many years engaged in the business of bank-note engraving and other engraving and printing in the city of New York. Up to the year 1884 the plaintiff conducted its business at No. 120 Broadway. In the year 1883 the plaintiff purchased 10 lots lying between the two lines of the defendant's railway in Trinity place and Greenwich street, paying for them $360,000. At this time the lots were covered with warehouse buildings, three and four stories high, which had been used as a packing-house, and afterwards as United States appraisers' stores. The defendant's elevated railroad had been in full operation on both sides of this property for some years prior to 1883, and the said operation has been continued since that time. The plaintiff's president and its four vice-presidents had charge of the matter of selecting a site and erecting a building for the company's business. They were all familiar with its business, and they were likewise familiar with the character and operation of the elevated railroad. They selected this place between the two railroads, erected a building thereon at a cost of about $500,000, and brought into it all the machinery, apparatus, and processes used in their business, but in doing so they and the architect employed by them took precautionary measures to avoid, as far as possible, any annoyance from the existence and operation of the railroad. This the evidence fully establishes. The case therefore falls within the principle laid down in *Tallman* v. *Railway Co.,* 121 N. Y 119, 23 N. E. Rep. 1134, where it was held that, while a plaintiff cannot be permitted to prove or allowed to recover damages which he might have sustained if he had put his lots to other uses than they were put to, or placed upon them other structures than were placed upon them, because such damages would be purely speculative and contingent, he is in no way prevented from putting his lots to any use to which he may wish to put them; that he has the right, acting reasonably, and not wantonly or rashly, to put upon them any structures which he may deem most to his advantage; and that, at any and all times, until the railway company acquires as against him the right to maintain and operate its road, he has the right to recover the diminished rental value of his lots, just as they were, occasioned by the maintenance and operation of the road. So in *Campbell* v. *Seaman,* 63 N. Y. 568, it was held that it did not affect plaintiff's right to an injunction that the brick-yard complained of was used before plaintiffs purchased their land, and that the plaintiffs, in the immediate vicinity thereof, had built a costly mansion, and had laid out their grounds, and planted them with ornamental and useful trees

and vines for their comfort and enjoyment. The court said: "The fact that trees and vines are for ornament or luxury entitles them no less to the protection of the law. Every one has the right to surround himself with articles of luxury, and he will be no less protected than one who provides himself only with articles of necessity. The law will protect a flower or a vine as well as an oak." It is true that it was formerly the law that one who came voluntarily into a known and existing nuisance could not abate it, or recover damages on account of it; but this has been modified to the extent that one who creates a nuisance cannot continue it, even as against a new-comer, unless he has gained by prescription the right to do so. This is because a continuation of the nuisance, or a repetition of it, is a new nuisance, for which the new-comer has his remedy. *Campbell* v. *Seaman*, 63 N. Y. 568. This principle is applicable to the elevated railroads in the city of New York, for, although the consent of the public authorities, obtained by them conditionally as hereinbefore stated, prevents their being dealt with as a public nuisance, they are nevertheless a private nuisance to abutting property injured by them as long as compensation is withheld, and no promiscuous citation of authorities will ever make it otherwise. The acts of the defendants, in so far as they constitute an inconsistent and excessive street use, when considered in reference to abutting property, involved, in a certain aspect, a trespass from day to day upon such property; in another aspect they involve a taking of private property within the meaning of the constitutional provision requiring compensation to be made; and in still another aspect, and especially when their combined effects are considered, they constitute a private or special nuisance to the abutting property injured. For the reasons stated the defendants can derive no benefit from the fact that the plaintiff erected the building upon the premises in suit after the construction and the commencement of the operation of the road. In *Kenkele* v. *Railway Co.*, 8 N. Y. Supp. 707, it was squarely held that the compensation to be made is to be determined as of the time of the trial, and that this is but a just result of the persistent neglect of the defendants to take the necessary measures provided by law for the acquisition of the easements necessary for the maintenance of their structure and the operation of their road.

Another point upon which the defendants laid great stress is that the trial judge allowed, as elements of damage, the cost of an electric light plant, and running the same, the cost of reflectors on the Greenwich-Street front of the building, and for injury and expense in the use of plaintiff's property, and interest on certain specific items. This raises a question as to the right rule of past damages in the case of a corporation in possession. In the case of an individual owner, who himself was the occupant of the premises, the true measure of damages is the loss of the rental value, provided it appears that the premises were rendered disagreeable and uncomfortable; but the recovery must be confined to the six years preceding the commencement of the action, together with the added damage to the time of the trial. This rule is inapplicable to a corporation in possession, because a corporation cannot be subjected to personal inconvenience and discomfort. Such a corporation, therefore, cannot recover as for loss of rental value, but only for additional expense incurred. Such a recovery is in lieu of and falls short of the amount recoverable by an individual owner, and is sanctioned by the decisions of *Seventh Ward Nat. Bank* v. *New York El. R. Co.*, 53 N. Y. Super. Ct. 412; *Fifth Nat. Bank* v. *New York El. R. Co.*, 28 Fed. Rep. 231; *Irving Nat. Bank* v. *Manhattan Ry. Co.*, (N. Y.;)[1] *New York Nat. Exch. Bank* v. *Metropolitan El. Ry. Co.*, 53 N. Y. Super. Ct. 511, and others. The items objected to in this case can be justified under the rule as laid down and as sanctioned by the cases cited. All the remaining questions raised by the appellants have been de-

[1] Not reported.

termined either expressly or in principle by former decisions in similar cases, and it is therefore not necessary to particularize concerning them or any of them. There being no merit in any of the exceptions disclosed by the record, the judgment appealed from should be affirmed, with costs.

SEDGWICK, C. J., concurs. INGRAHAM, J., concurs in the result.