## MOODY *vs.* McCLELLAND.

[ACTION ON THE CASE BETWEEN ADJACENT LAND PROPRIETORS.]

1. *When action lies between owners of adjacent lands, for injuries caused by excavations.*—It is a settled principle of the common law, which was also recognized and protected by the civil law, that every man has a right to lateral support for his land from the adjacent lands of other proprietors, and that the latter cannot impair or destroy this right by excavations on their own lands; but this principle applies only to the land itself in its natural state, and does not extend to houses, or other artificial structures thereon erected, which increase the lateral pressure on the adjacent lands; yet, if a person making a lawful excavation on his own land, performs the work so negligently and unskillfully that injury thereby results to the land or house of an adjacent proprietor, he is liable to an action for damages at the suit of the injured person.

2. *When and what action lies between tenants in common.*—An action on the case lies, and is the proper remedy, in favor of one tenant in common of a party-wall, against his co-tenant, for an injury to the wall, and to the plaintiff's house of which it formed a part, caused by the negligent and unskillful manner in which the defendant made an excavation on his own lot.

APPEAL from the Circuit Court of Tuskaloosa.
Tried before the Hon. WM. S. MUDD.

THIS action was brought by John McClelland, against Washington Moody, and was commenced on the 1st September, 1860. The complaint contained, originally, four counts, the third of which was in the following words: "3. And the said plaintiff claims of the said defendant the further sum of three thousand dollars, as damages, because he says that, on the 20th day of July, 1860, being the sole owner and proprietor of a brick house, in which he then resided with his family, and in which he conducted his

business as a manufacturer and dealer in boots and shoes; and also being the sole owner and proprietor of the lot of ground on which the said brick house was and is situated, that is to say", &c., (describing the lot by its number, street, &c., in the city of Tuskaloosa,) "he sold and conveyed, on the day and year last aforesaid, to the said defendant, who owned the adjoining lot east of the lot above described, one undivided moiety of the eastern wall of the said brick house, and of the ground on which the said eastern wall then stood; the said wall to be used and held by them, as tenants in common, as a party-wall. And the said plaintiff further avers, that afterwards, to-wit, on the 31st day of August, 1860, the said defendant dug and excavated below, beneath, and adjacent to the foundation of said eastern wall; and that in so digging and excavating, as aforesaid, he performed his work in so careless and unskillful a manner, that, by reason of said digging and excavating as aforesaid, the said defendant caused the walls of said house to give way, crack, and settle down, and other injuries to the said house did; whereby the said house became, and still is, so unsafe as to render the same dangerous to inhabit, either as a dwelling-house, or as a business house; and that, by reason thereof, he has been obliged to abandon it, both as a dwelling-house, and as a place of business; thereby damaging him to the amount of three thousand dollars as aforesaid."

The fourth count averred the plaintiff's ownership of the premises, and his sale of a moiety of the wall to the defendant, who owned the adjoining lot, "the said wall to be used by them as tenants in common"; and then proceeded as follows: "And the said plaintiff avers, that afterwards, to-wit, on the 31st day of August, 1860, the said defendant dug out and excavated a cellar on his said lot, adjoining the plaintiff's lot as aforesaid; and that, in so digging out and excavating his said cellar, he performed his work in so careless and unskillful a manner as to undermine and weaken the foundation of the said eastern wall, so as to cause the same, and the other walls of the said house, to give way, crack, and settle down, and other injuries to the said house did; whereby the said house became, and still remains, so

unsafe as to render the same dangerous to inhabit, either as a dwelling-house, or as a business house; and that, by reason thereof, he has been obliged to abandon it, both as a dwelling-house, and as a house of business; thereby damaging him to the amount of three thousand dollars aforesaid."

The defendant demurred to the whole complaint, and to each count separately, and assigned the following causes of demurrer: "1st, because the said complaint does not, nor does either of the counts thereof, contain or state any cause of action against the defendant; 2d, because they do not show that the defendant did anything he had not a legal right to do; 3d, because they do not show that the damage complained of was the necessary result of any unlawful act of the defendant, or was naturally and reasonably to be expected or anticipated; 4th, because they do not show that the plaintiff did all that it was his duty to do, to protect or prevent injury to his house, or that he did not have timely notice to enable him to do so; 5th, because they do not show that the plaintiff could not have averted and prevented the damage, by doing all that it was incumbent on him to do, to protect his house, or that he did not have timely notice to enable him to do so; 6th, because the first and third counts do not state that the injury complained of was the result of any carelessness, negligence, or unskillfulness on the part of the defendant, and the second and fourth do not aver that said injury was the effect of the alleged carelessness or unskillfulness of the defendant; and, 7th, because they do not state or show in what the alleged carelessness or unskillfulness consisted."

The court sustained the demurrer to the first and second counts, but overruled it as to the third and fourth; and the overruling of the demurrer to those counts is now assigned as error.

E. W. PECK, for the appellant, cited *Mahan v. Brown*, 13 Wendell, 261; *Plank-Road Co. v. Douglass*, 5 Selden, 444; *Thurston v. Hancock*, 12 Mass. 220; and *Peyton v. Mayor of London*, 9 Barn. & Cress. 725.

R. W. WALKER, J.—This case requires at our hands some examination of the law governing actions for injuries to land, or to artificial erections built upon it, resulting from excavations, or other like acts, done upon adjoining premises; a subject which, as our Reports show, this court has heretofore had little occasion to consider. One of the earliest attempts at an explanation of the law on this head, to be found in the books, may still be cited as a correct statement of the leading principles applicable to this class of actions. In 2 Rolle's Abr. (*Trespass* 1, pl. 1, (a), p. 564,) it is said: "If A., seized in fee of copy-hold land next adjoining the land of B., erect a new house on his copy-hold land, and some part of the house is erected on the confines of his land next adjoining the land of B.; if B. afterwards dig his land so near the foundation of A.'s house, but not touching the land of A., that thereby the foundation of the house and the house itself fall into the pit; yet no action lies by A. against B., because it was A.'s own fault that he built his house so near to B.'s land; for he by his act cannot hinder B. from making the best use of his land that he can.—*Pasch.* 15 Car. B. R., between *Wilde* and *Winsterley,* by the court. But *semble,* that a man who has land next adjoining my land, cannot dig his land so near mine that thereby my land shall go into his pit; and for this, if an action were brought, it would lie." The distinction here taken, between an injury to a house, or other erection built upon the land, and the soil itself, has been frequently cited with approbation by subsequent writers and judges. The principle, that the owner of land has the right to lateral support from the adjoining soil, and that the adjacent proprietor cannot remove the earth to such an extent as to withdraw the natural support of his neighbor's soil, without being liable for the injury, though seldom the precise point of judgment in any case, may be regarded as a settled doctrine of the common law. "The negation of this principle," as has been well observed, "would be incompatible with the very security of property, as it is obvious that, if the neighboring owners might excavate their soil on every side up to the boundary line, to an indefinite depth, land thus deprived of support on all sides could not stand by its own coherence alone."—Gale & Whatley on Easements, 216.

In the interesting and instructive case of *Humphries v. Brogden,* (1 Eng. L. & Eq. 243,) Lord Campbell, C. J., stated the principle as one 'long settled by the law of England,' and gave it his emphatic approval. "It stands," he said, "on natural justice, and is essential to the protection and enjoyment of property in the soil. Although it places a restraint on what a man may do with his own property, it is in accordance with the precept, *sic utere tuo ut alienum non lædas.*" The same doctrine was fully recognized by C. J. Parker, in *Thruston v. Hancock,* (12 Mass. 223,) the leading American case on this branch of the law; and it is thus stated by Chancellor Walworth, in *Lasala v. Holbrook* (4 Paige, 172): "I have a natural right to the use of my land, in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots; and the owners of those lots will not be permitted to destroy my land by removing this natural support or barrier." To the same effect are *Farrand v. Marshall,* 19 Barb. 380; *S. C.,* 21 Barb. 409; *Hay v. Cohoes Co.,* 2 Comstock, 162; *McGuire v. Grant,* 1 Dutcher, (N. J.) 356; *Charless v. Rankin,* 22 Miss. 566; *Wyatt v. Harrison,* 3 Barn. & Ald. 871. See, also, Comyn's Digest, *Action on the case for a nuisance* (a); 2 Hilliard on Torts, 153; *Peyton v. Mayor,* 9 B. & Cr. 725.

The principle was probably borrowed from the civil law; at least, the civil law recognized the right, and protected it by specific regulations. "If a man dig a sepulchre, or a ditch, he shall leave between it and his neighbor's land a space equal to its depth; and if he dig a well, he shall leave the space of a fathom."—See Gale & Whatley, *supra; Humphries v. Brogden,* 1 Eng. L. & Eq. 249. This right of the owner to have his land surrounded and protected by the adjacent soil, is a right of property necessarily and naturally attached to the soil, and passes with it.—*Humphries v. Brogden, supra; Farrand v. Marshall, supra.*

But the right here alluded to only applies to land in its natural state, and the doctrine does not extend to cases where the owner of land has, by buildings, or other artificial erections, increased the lateral pressure of his land upon the adjoining soil. The principle established by the authorities is, that one land-owner cannot, by altering the

natural condition of his land, deprive the adjoining pro-
prietor of the privilege of using his own land as he might
have done before; and, consequently, that he cannot, by
building a house near the margin of his land, prevent his
neighbor from excavating his own soil, although it may en-
danger the house. Thus, in *Wyatt v. Harrison*, (3 Barn. &
Adol. 871,) Lord Tenterden, C. J., said: "It may be true
that, if my land adjoins that of another, and I have not by
building increased the weight upon my soil, and my neigh-
bor digs in his land so as to occasion mine to fall in, he
may be liable to an action. But, if I have laid an addi-
tional weight upon my land, it does not follow that he is to
be deprived of the right of digging his own ground, be-
cause mine will then become incapable of supporting the
artificial weight which I have laid upon it." And accord-
ingly it was held in that case, that the possessor of a house,
which is not ancient, cannot maintain an action against the
owner of adjoining land, for digging away that land so that
the house falls in.

In *Partridge v. Scott*, (3 M. & W. 220,) the same question
was considered, and the same conclusion arrived at. So,
in *Thruston v. Hancock*, (supra,) the plaintiff had built a
house on his own land, within two feet of the boundary
line, and, ten years afterwards, the owner of the adjoining
land dug so deep into his own land as to endanger the plain-
tiff's house; in consequence of which, he left it, and took
it down. It was held, that no action lay for the injury done
to the house, but only for the damages arising from the
falling of the natural soil into the pit dug by the defendant.
Parker, C. J., said: "A man, who himself builds a house
adjoining his neighbor's land, ought to foresee the proba-
ble use by his neighbor of the adjoining land, and by con-
vention, or by a different arrangement of his house, secure
himself against future interruption and inconvenience."
So, in *Lasala v. Holbrook*, (4 Paige, 172,) it was held, that
the proprietors of a church in the city of New York, which
had stood for thirty-six years, were not entitled to an in-
junction against an adjoining proprietor, who was engaged
in excavating on his own lot to a depth far below the foun-
dation of the church, so as to endanger the walls of the

latter, which had already begun to settle. The chancellor (Walworth), after asserting the right, pertaining to land in its natural state, to lateral support from adjacent soil, said: "But my neighbor has the right to dig the pit upon his own land, if necessary to its convenient or beneficial use, when it can be done without injury to my land in its natural state. I cannot, therefore, deprive him of this right, by erecting a building on my lot, the weight of which will cause my land to fall into the pit which he may dig in the proper and legitimate exercise of his previous right to improve his own lot." The same principle is recognized in many other cases.—*Massey v. Goyder*, 4 C. & P. 161; *Smith v. Henrick*, 7 Com. B. 565; *Jeffries v. Williams*, 1 Eng. L. & Eq. 433; *Panton v. Holland*, 17 Johns. 92; *Radcliff v. Mayor*, 4 Comstock, 195; *Farrand v. Marshall*, 19 Barb. 390. *₃₈₀*

The maxim, *sic utere tuo ut alienum non lædas*, is, therefore, not to be taken literally. "Interpreted literally, it would enjoin a man against any use of his own property, which in its consequences might injuriously affect the interests of others; but no such legal principle ever existed."— *Auburn Plank-Road Co. v. Douglass*, 5 Selden, 445. On the contrary, the general principle is, that every proprietor has absolute dominion over his own property; and that loss or damage to one person, arising from the use made by another of his own property, is *damnum absque injuria*, and affords no ground of action, unless the party injured has previously acquired a legal right, in the nature of an easement, curtailing the absolute dominion of the owner over his property, and limiting him in the use he may make of it.— 5 Selden, 446; *Radcliff v. Mayor*, 4 Comstock, 195; *Gerrish v. Proprietors of Wharf Co.*, 26 Maine, 384.

The cases which hold that an owner may set fire to his fallow ground, and will not be liable to an action, though the fire run into and burn the woodland of his neighbor; (*Clarke v. Fort*, 8 Johns. 21; *Stuart v. Hawley*, 22 Barb. 619; *Averett v. Merrill*, 4 Jones' L. 323;) that he may open and work a mine in his own land, though it cut off an underground stream of water, which before supplied his neighbor's well, and leave the well dry; (*Acton v. Blundell*, 12 M. & W. 324;) that he may build on his own land, though it

stops the lights of his neighbor, and even though he build for the very purpose of stopping those lights; (*Mahan v. Brown*, 13 Wend. 261; *Parker v. Foot*, 19 Wend. 309; *Pickard v. Collins*, 23 Barb. 444;) that he may make an excavation in his land, within a few feet of a public street, without being liable for the injury sustained by a person who, passing in the night time, goes over the line of the street, and falls into the excavation; (*Howland v. Vincent*, 10 Metc. 371;) and that he may pull down his own wall, though the vaults of his neighbor be thereby destroyed; (*Chadwick v. Trower*, 6 Bing. N. C. 1,)—are all, like the cases before cited, but so many illustrations of this general principle.—See, also, *McLauchlin v. Charlotte R. R. Co.*, 5 Rich. L. 583.

But these cases, and all others which declare that injury to one person, resulting from the use made by another of his own property, constitutes no ground of action, proceed upon the assumption, that the act causing the injury was performed in a proper manner—that is, with reasonable care and skill. And here is to be found the legitimate import of the maxim, *sic utere*, &c. It qualifies the right of the owner to do what he will with his own property, by requiring that in his use of it he shall exercise proper care, and by holding him responsible for the consequences of an act lawful in itself, if it is done in such a negligent and unskillful manner as to cause an injury to another. In other words, it prohibits him from accomplishing a legal object in an illegal manner. Thus, in *Vaughn v. Menlove*, (3 Bing. N. C. 468,) the defendant was held liable for constructing a hay-rick on the extremity of his land, in so negligent a manner that spontaneous ignition followed, and the plaintiff's cottage was destroyed. So, an action lies for carelessly and negligently kindling a fire on defendant's own land, whereby the property of the plaintiff on the adjacent land was burnt.—*Barnard v. Poor*, 21 Pick. 378; *Garrett v. Freeman*, 5 Jones' L. 78. So, in *Crommelin v. Coxe & Co.*, (30 Ala. 318,) this court held, that an action on the case lies for damages caused by an accumulation of rain-water in an open cellar, and its percolation through the earth into plaintiff's cellar on an adjoining lot. And where public officers, having authority to construct and repair streets, made a

culvert to pass a stream of water in such an unskillful and negligent manner as to cause an injury to another by the choking of the culvert, they were held liable to answer in damages.—*Rochester White Lead Co. v. City of Rochester*, 3 Comstock, 463. *Pari ratione*, the right of the owner to dig on his own land, without being answerable for the consequent injury to his neighbor's house, or wall, is subject to the qualification, that he dig with due care and skill, and that he shall be liable in damages if the injury to his neighbor is occasioned by the negligent and unskillful manner in which the work is performed. That was the decision in *Dodd v. Holmes*, 1 Ad. & Ell. 493; and the principle has been adopted by the courts in this country, as well as in England.—*Walters v. Pfiel*, 1 Moody & Malk. 362; *Brown v. Windsor*, 1 Cromp. & Jerv. 20; *Trower v. Chadwick*, 3 Bing. N. C. 334; *Shrieve v. Stokes*, 8 B. Monroe, 454; *Lasala v. Holbrook*, 4 Paige, 172; *Radcliff v. Mayor*, 4 Comstock, 200; *Panton v. Holland*, 17 Johns. 92; *Charless v. Rankin*, 22 Miss. 566; *Pierce v. Musson*, 17 La. R. 389; also, 3 Kent, m. p. 437, and notes; 2 Hilliard on Torts, 153.

The 3d and 4th counts of the complaint state, in effect, that the defendant did the act complained of so carelessly and unskillfully that, by reason thereof, injury to the party-wall and to the plaintiff's house resulted. The *gravamen* of the complaint is, not simply the act of digging and excavating, but that it was done in such a careless and improper manner as to occasion the injury described. According to the principle above laid down, and the authorities cited, these counts disclosed a good cause of action.

The view just taken renders it unnecessary for us to consider whether the complaint would not have been sufficient, even without the allegations of negligence, and of injury to the plaintiff in consequence thereof. All the counts state that the plaintiff had sold to the defendant, who owned the adjoining lot, an undivided moiety of the eastern wall of his house, and of the ground on which it stood; and that, by contract between them, the wall was to be held and used by them as tenants in common as a party-wall. It may be that, by this transaction, the plaintiff acquired an easement to have his house supported by the wall in question, and

that any interference with the wall by the defendant, injurious to it, or to the plaintiff's house, even though such interference be not direct, but consequential upon an excavation made with due care and skill by the defendant upon his own lot, would be a good cause of action. But, as the complaint is clearly sufficient on the grounds already stated, and as our judgment finally disposes of the case, we withhold the expression of an opinion on this point.—On this subject, see *Richards v. Rose,* 24 Eng. L. & Eq. 406; *Brown v. Windsor,* 1 Cr. & Jerv. 20; *Eno v. Delbecchio,* 4 Duer, 53; *Webster v. Stevens,* 5 Duer, 553; *Partridge v. Gilbert,* 15 N. Y. 601; 2 Bouv. Inst. 178; *Crabb on R. P.* § 506; *Peyton v. Mayor,* 9 B. & Cr. 725.)

[2.] An action on the case is the proper remedy to be pursued by one tenant in common of a party-wall, against his co-tenant, where an injury to the wall, and the house of the plaintiff of which it forms a part, has been occasioned by the negligent and unskillful manner in which his co-tenant has made an excavation on his own lot.—*Cabitt v. Porter,* 8 B. & Cr. 257, opinion of Littledale, J.; *Bradbee v. Mayor,* 4 M. & Gr. 714.

Judgment affirmed.