103 So.2d 319

Nannie NICHOLS

v.

WOODWARD IRON COMPANY.

6 Div. 941.

Supreme Court of Alabama.

May 22, 1958.

Lipscomb, Brobston, Jones & Brobston and Richard L. Jones, Bessemer, for appellant.

B. J. Dryer, Woodward, for appellee.

GOODWYN, Justice.

The appellant, Mrs. Nannie Nichols, brought action against appellee, Woodward Iron Company, in the circuit court of Jefferson County to recover damages allegedly resulting from disturbance of her husband's grave by defendant's mining operations. The jury returned a verdict for the defendant and judgment was rendered accordingly. Plaintiff's motion for a new trial being overruled, she brought this appeal.

The case went to the jury on plaintiff's Count A and defendant's plea in short by consent.

Count A, in substance, alleges that the defendant engaged in underground mining operations beneath the surface of the Oak Grove M. E. Church Cemetery; that plaintiff was in possession of a burial plot in said cemetery in which plot her husband was buried; that defendant, by its underground mining operations, removed and excavated from "beneath and adjacent to said plot quantities of coal and other minerals, which * * * supported the surface of said land in its natural state or condition"; that "as a proximate consequence of the mining operations of the defendant, and said removal by defendant of said coal and other minerals as aforesaid, great surface cracks appeared in and on said grave, and said grave was caused to crack and sink, and otherwise become disturbed, and plaintiff was caused to suffer great humiliation, chagrin and embarrassment, and has been greatly shocked and grieved, and has been caused to suffer such mental anguish and has been caused to be greatly disturbed in mind, and plaintiff's feelings have been outraged, and plaintiff is apprehensive that the entire grave will cave into the mine, or mines, of the defendant."

Appellee insists that there is no liability because its mining operations were not carried on directly beneath the surface of plaintiff's burial plot; that "the rule of absolute liability for damage to the surface of land resulting from mining applies only to mining directly beneath the surface in the same land and in event of a claim for damage to the surface from mining in adjoining land negligence of the miner must be alleged and proved." In support of this contention appellee cites the following cases: Woodward Iron Company v. Mumpower, 248 Ala. 502, 28 So.2d 625; Sloss-Sheffield Steel & Iron Co. v. Wilkes, 231 Ala. 511, 165 So. 764, 109 A.L.R. 385; Corona Coal Co. v. Thomas, 212 Ala. 56, 101 So. 673; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am.St.Rep. 368.

Appellant insists that even though a pillar of coal was left directly under her burial plot "if the size of the pillar is still too small and insufficient to support the surface, thereby causing the surface to crack and subside," the defendant is liable. It appears to be undisputed that a pillar of coal 20 feet wide and 60 feet long was left under plaintiff's 8 feet by 8 feet burial plot (the

portion occupied by her husband's grave being 8 feet by 4 feet).

Bearing on this issue are the following written charges, given at defendant's request:

"24. I charge you, Gentlemen of the Jury, that before you can render a verdict for the plaintiff of damages on account of mental anguish, you must be reasonably satisfied from all of the evidence in the case that there was some actual damage to the burial plot claimed by the plaintiff and that said actual damage proximately resulted from the mining operations of the defendant directly under said burial plot at the times alleged in the complaint."

"32. I charge you, Gentlemen of the Jury, that under the evidence in this case that you cannot award the plaintiff any damages on account of any mining operations of the defendant other than those operations directly beneath the burial plot which is claimed by the plaintiff, and, if you are reasonably satisfied from all the evidence in this case that the defendant did not remove the coal and other material or minerals directly beneath said burial plot, then your verdict must be for the defendant."

"33. I charge you, Gentlemen of the Jury, that under the allegations of the complaint in this case you cannot award the plaintiff any amount because of any damage which might have been caused to said grave or said burial plot as a result of mining of the defendant in lands not directly under said burial plot."

Appellee contends that these charges correctly state the rule of liability of a mine owner for damages to adjoining surface land. Appellant insists that the trial court erred in giving them. Clearly, these charges are to the effect that a mine owner has a right to remove minerals right up to his property line and is not liable for any damage to adjoining land caused thereby unless resulting from negligence in the mining operations. In other words, they lay down the principle that a mine owner is not required to provide lateral support for adjoining land in its natural state.

■ It does not appear that the precise question presented by these charges has been dealt with authoritatively by this court. However, it has been held consistently in this jurisdiction, and generally, that an adjoining landowner is entitled to lateral support for his land in its natural state. H. H. Parker & Bro. v. Hodgson, 172 Ala. 632, 634–635, 55 So. 818; Myer v. Hobbs, 57 Ala. 175, 176–177, 29 Am.Rep. 719; Moody v. McClelland, 39 Ala. 45(1), 48–49, 84 Am.Dec. 770; 2 C.J.S. Adjoining Landowners §§ 8 and 10, pp. 11, 12; 1 Am. Jur., Adjoining Landowners, § 25, p. 521; Restatement of the Law, Torts, Vol. IV, § 817, pp. 187–199; Tiffany, The Law of Real Property, 3d Ed., Vol. 3, § 752, p. 186; Lindley on Mines, Vol. 3, §§ 831(p. 2030), 832(pp. 2030–2032), 833(pp. 2032–2034); Young v. Mall Investment Company, 172 Minn. 428, 215 N.W. 840, 55 A.L.R. 461; Hunt v. Peake (1860), Johns.Rep. 705, 709, 710, 70 Eng.Reprint 603. We see no good reason why this rule should not apply when there are underground mining operations just as it does when there are open excavations.

In Myer v. Hobbs, supra, the rule as to lateral support is thus stated:

"We have no disposition to discuss or re-examine the principles settled in Moody v. McClelland, 39 Ala. 45. That case was thoroughly considered, and embraces an elaborate collation of authorities, English and American, and we are satisfied with the principle then announced, 'that every man has a right to lateral support for his land from the adjacent lands of other proprietors, and that the latter cannot impair or destroy this right by excava-

tions on their own lands; but this principle applies only to the land itself in its natural·state, and does not extend to houses, or other artificial structures thereon erected, which increase the lateral pressure on the adjacent lands. Yet, if a person making a lawful excavation on his own land, performs the work so negligently and unskillfully that injury thereby results to the land or house of an adjacent proprietor, he is liable to an action for damages at the suit of the injured person.' * * *"

From H. H. Parker & Bro. v. Hodgson, supra, is' the following [172 Ala. 632, 55 So. 819]:

"It is a settled principle of law that the right to lateral support applies to the land in its natural condition, and an adjoining landowner cannot by erecting buildings on the margin of his own land deprive the owner of the attingent lot of the right to excavate his own lot up to the line of his neighbor's property, though on account of the additional burden placed upon the land, by the erection of the house thereon, said house may fall, by reason of the withdrawal of the lateral support. 1 Cyc. 776, 778; Moody v. Mc-Cleland, 39 Ala. 45, 84 Am.Dec. 770; Myer v. Hobbs, 57 Ala. 175, 29 Am. Rep. 719."

In Lindley on Mines, Vol. 3, §§ 831 (p. 2030), 832 (pp. 2030–2031) and 833 (pp. 2032–2033), supra, the rule is stated as follows:

"§ 831. Introductory.—The right of lateral or adjacent support is founded on the same general principles as that of vertical or subjacent support. * *

"§ 832. General principles—Negligence as an element.—Every man has the natural right to the use of his land in the situation in which it was placed by nature, surrounded and protected by the soil of adjacent lots. When one adjoining owner removes the soil, he is not doing simply what he may with his own, but he is interfering with the right which his neighbor has in the same soil.

"Few principles of law can be traced to an earlier or to a more constant recognition, through a long series of uniform and consistent decisions, than this.

"In the case of land which is fixed in its place, each owner has the absolute right to have the land remain in its natural condition, unaffected by any act of his neighbor; and if the neighbor digs upon or improves his own land so as to injure this right, the one injured may maintain an action against him without proof of negligence.

"The right of lateral support is an absolute one. The obligation to respect it is in no way affected by the question of negligence.

"If the owner of the adjoining land takes away the natural support it does not matter whether he acts with due care and is guilty of no negligence.

\* \* \* \* \* \*

" § 833. Right limited to support of soil in its natural state.—As in the case of subjacent support, the lateral right applies only to the land in its natural condition.

\* \* \* \* \* \*

"This rule is well established in America and in England."

Tiffany, The Law of Real Property, 3d Ed., Vol. 3, pp. 186, 187, supra, in discussing lateral support of land in its natural state, has this to say:

"§ 752. Lateral support—Land in its natural state.

"Real estate, as distinguished from personal property, is sometimes called

immovable. It comprises a portion of the earth, limited in its extent by the terms of the description, and, while it has definite outlines in law, it extends upward into the air and downward into the soil to an indefinite extent. It is not a separate and distinct parcel of land, but is, in its natural state, held together, connected and protected by natural forces which have existed from time immemorial. These natural factors are the basis for the doctrine of lateral support, and this doctrine is absolute, * * *.

"As a general rule, every landowner is entitled to have his soil remain in its natural position, without being caused to fall away by reason of excavations or other improvements which may be made on neighboring land, * * *.

"This right of lateral support involves no right to have the neighboring land remain in its natural state or position, but merely the right to have one's own land remain in its natural position. * * *"

From 1 Am.Jur., Adjoining Landowners, § 25, p. 521, supra, is the following:

"§ 25. Land in Natural State.—It is now well settled that the owner of land is entitled to have it supported and protected in its natural condition by the land of his adjoining proprietor, and that if such adjoining owner removes such natural support, whereby the soil of the former is disturbed or falls away, he is legally liable for all damages so occasioned. There are few principles of the law that can be traced to an earlier or more constant recognition, through a long series of uniform and consistent decisions, than this. The liability in this respect is not dependent in any wise upon the degree of skill or care that he exercises in making the excavation, but is absolute, * * *."

■ The rule is thus stated in 2 C.J.S. Adjoining Landowners §§ 8 and 10, pp. 11, 12, supra:

"§ 8. In General

\* \* \* \* \* \*

"As an incident to ownership a landowner has the right to excavate on his estate for a lawful purpose close to the boundary line, but he owes the duty, nondelegable in its nature, to protect the adjoining owner's land in its natural condition from the danger accompanying the removal of lateral support, and accordingly must proceed in such a manner as will prevent the adjoining land from falling, substituting an artificial support if the nature of the soil or the excavation so requires, unless the adjacent proprietor has consented to the removal of his soil."

"§ 10. Negligence

\* \* \* \* \* \*

"As the right to lateral support of land in its natural condition is absolute, the removal of lateral support causing damage to the land is actionable whether or not precaution against injury was taken or the work was conducted negligently, unless the work was conducted in a manner in accordance with an agreement between the parties."

In Young v. Mall Investment Company, 172 Minn. 428, 215 N.W. 840, 55 A.L.R. 461, supra, the common law rule is stated as follows:

"The rule of the common law, followed and held to be the law in this state, and declared to be the law by the Supreme Court of the United States and the Supreme Courts of many of the states, is that the landowner has the right to have his land preserved unbroken, and that an adjoining owner excavating on his own land is subject to this restriction and must not remove the earth so near to the land of his neighbor, or in such manner, as to cause his neighbor's soil to crumble or

cave in under its own weight. But this right of lateral support applies only to the land in its natural condition and not to buildings or other artificial structures or loads placed on the land. One who excavates on his own land must guard the adjoining land to the extent that, if the soil thereon had remained, or is, in its natural condition, it will not crumble or cave in of its own weight.

"The rule is stated and approved in Northern Transp. Co. v. City of Chicago, 99 U.S. 635, 25 L.Ed. 336; Schultz v. Bower, 57 Minn. 493, 59 N.W. 631, 47 Am.St.Rep. 630; Gilmore v. Driscoll, 122 Mass. 199, 23 Am.Rep. 312; Bissell v. Ford, 176 Mich. 64, 141 N.W. 860; Thomp. Real Prop. § 549; and in other cases."

In Hunt v. Peake (1860), Johns.Rep. 705, 709–710, 70 Eng.Reprint 603, supra, the common law rule is thus stated:

" * * * What I conceive to be settled is this, that every person in working earth in his own land, whether by surface excavations or underground pits, is bound so to work as not to cause any subsidence of the original soil of his neighbour. In other words, every man is entitled to have his land in its natural state supported by the adjoining land of his neighbour; and this is an original right incident to his property of which he cannot be deprived by any operations which his neighbour may carry on in his adjoining property. * * * There is no question, therefore, whether the workings are skillfully or unskillfully conducted. The right to support for the soil itself is an absolute right which the adjoining owner is not entitled to infringe, whether by skillful workings or otherwise."

■ We are at the conclusion that the charges do not properly state the applicable law in this state and that the giving of them calls for a reversal.

We have carefully examined the four cases relied on by appellee and do not think they militate against this conclusion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.