**ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a corporation, Plaintiff-Appellant-Cross Appellee,**

v.

**R. A. WADE, Jr., etc., et al., Defendants-Appellees-Cross Appellee.**

**No. 77-2053.**

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1979.

Rehearing Denied Jan. 2, 1980.

L. Vastine Stabler, Jr., Michael C. Quillen, Birmingham, Ala., for plaintiff-appellant, cross-appellee.

James E. Simpson, Lawrence B. Clark, Bibb Allen, Birmingham, Ala., for defendants-appellees, cross-appellee.

Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant, St. Louis-San Francisco Railway Company (Frisco) sued R. A. Wade & Company, a quarry operator, and Republic Steel Corporation, landowner, for damages resulting from the encroachment of a rock slide on Frisco's right of way. The slide was caused by Wade's quarrying operation. Wade counterclaimed against Frisco for damages, asserting that the railroad tortiously interfered with Wade's business by blocking the only access road to Wade's quarry.

Frisco was unsuccessful at trial. The district judge directed a verdict in favor of landowner Republic and the jury found in favor of Wade. On Wade's counterclaim, the jury found for Wade. We reverse on Frisco's claims against Wade and Republic for encroachment on the right of way and affirm the judgment in favor of Wade on its counterclaim against Frisco.

### I. The facts

Frisco's predecessor acquired a 50-foot right of way from Republic's predecessor in 1892 and built its main line on it. Around 1936 Wade began quarrying operations on land owned by Republic and northward of the Frisco main line. In 1953 Frisco acquired from Republic a second right of way, a 25-foot strip north of the 1892 right of

way and adjacent to Wade's quarry. It then built a siding between the main line and the quarry.

Wade works his quarry by dynamiting rock from the quarry walls and removing the broken product from the floor of the quarry. After a dynamite blast in the quarry on October 8, 1973, a rock slide occurred that encroached around 29 feet into Frisco's right(s) of way.[1] As a result of this slide, Frisco had to close the siding until June 13, 1974, and impose a 5 m. p. h. speed restriction on its main line. Fill material had to be dropped into the area where the slide occurred. Heavy rains caused the fill to settle, which delayed the completion of the repairs. Frisco was required to install monitoring devices to detect any shifting in the land. Wade has continued to mine in the area.[2]

Frisco sued Republic for breach of covenants, contained in the easement grants, not to interfere with the railroad's right of way. The district court directed a verdict in favor of Republic. Frisco sued Wade for withdrawal of lateral support and for nuisance. On the lateral support claim, the jury, through special interrogatories, concluded that Wade withdrew lateral support from Frisco's right of way and that Frisco assumed the risk of loss of lateral support. Frisco challenges the availability of an assumption of risk defense to its lateral support claim and, assuming that such a defense is available, the sufficiency of evidence to support the jury's verdict.

On the nuisance claim against Wade, the jury found that Wade did not maintain either an absolute or a negligent nuisance. Frisco argues that the jury charge on nuisance was erroneous.

Wade counterclaimed against Frisco for tortious interference with its business and won actual and punitive damages remitted to $100,000. The only road access to Wade's quarry was over Frisco's right of way. The jury found that Frisco intentionally and maliciously left its railroad cars blocking the access road, which interfered with the pick-up of Wade's product by its customers. Frisco claims that Wade had no protectible interest entitling it to cross Frisco's right of way and that there was insufficient evidence to support the jury's verdict.

## II. Lateral support

■ The parties disagree over whether Wade's defense to the loss of lateral support was submitted to the jury on an assumption of risk theory or a consent theory. The special interrogatory called the defense assumption of risk. Wade argues, however, that the jury charge laid out the necessary elements of a consent defense; that Frisco "had a full appreciation of the risk of a subsidence and had the true intent to consent to that risk and to take such risk." It is of no consequence how the defense is categorized for purposes of this suit, because neither consent nor assumption of risk was available as a defense to the withdrawal of lateral support claim.

The Alabama law governing lateral support of land by an adjoining landowner is laid out in four cases: *Moody v. McClelland*, 39 Ala. 45 (1863); *Myer v. Hobbs*, 57 Ala. 175 (1876); *H. H. Parker Bro. v. Hodgson*, 172 Ala. 632, 55 So. 818 (1911); *Nichols v. Woodward Iron Co.*, 267 Ala. 401, 103 So.2d 319 (1958). An adjoining landowner owes a duty to support his neighbor's land in its natural state. This duty does not extend to the support of any structures on the land.

"I have a natural right to the use of my land, in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots . . ."

\* \* \* \* \* \*

But the right here alluded to only applies to land in its natural state, and the doctrine does not extend to cases where the owner of land has, by buildings, or other artificial erections, increased the lateral pressure of his land upon the adjoining soil.

---

1. The principal subsidence was, of course, beneath the 1952 strip.

2. In 1974 Wade became the fee owner of the quarry site and of the land subject to Frisco's rights of way.

*Moody v. McClelland, supra* at 49. There is at least an implication in the earlier cases, *Moody* and *Myer v. Hobbs,* that the duty of lateral support is only breached by the landowner's excavating with lack of care, skill and diligence. But *Nichols,* decided in 1958, clearly states that the duty of lateral support is absolute, and the landowner is liable for withdrawing lateral support even if he is guilty of no negligence. In *Nichols* the Alabama Supreme Court, quoting from 3 Lindley on Mines § 832, said:

> "In the case of land which is fixed in its place, each owner has the absolute right to have the land remain in its natural condition, unaffected by any act of his neighbor; and if the neighbor digs upon or improves his own land so as to injure this right, the one injured may maintain an action against him without proof of negligence.

> "The right of lateral support is an absolute one. The obligation to respect it is in no way affected by the question of negligence.

> "If the owner of the adjoining land takes away the natural support it does not matter whether he acts with due care and is guilty of no negligence."

103 So.2d at 322. This view is repeated at p. 323. It is also the view of the Restatement (Second) of Torts § 817 (1977).

Frisco's claim against Wade for withdrawal of lateral support is predicated upon the foregoing absolute duty theory. Frisco made no claim that Wade acted negligently or unskillfully. Assumption of risk by Frisco was, therefore, not relevant and it was improperly asserted as a defense.[3] Turning to consent, Frisco could, of course, enter into an enforceable agreement to relieve Wade of his duty to provide lateral support.[4] Short of such an agreement, consent had no place in the case.

■ The absolute duty of lateral support extends to only land in its natural state. We do not understand this to mean that once an owner erects an artificial structure his neighbor is relieved of the duty of lateral support. Rather we think that the neighbor continues to have the same duty as before, described by the Restatement as "naturally necessary lateral support."

> *c. Naturally necessary lateral support.* Naturally necessary lateral support is that support which the supported land itself requires and which, in its natural condition and in the natural condition of the surrounding land, it would require. It does not include the support needed because of the presence of artificial additions to or other artificial alterations in the supported land or the surrounding land. The measure of this right of the other and of this duty of the actor is the natural dependence of land upon land, and the right and duty are not enlarged by alterations of the natural condition. Lateral support made necessary by these alterations is not naturally necessary support. This distinction is more particularly stated and illustrated in Comments *e* to *h.*

> *d.* The rule stated in this Subsection applies only to lateral support of the land itself. It does not apply to lateral support required by artificial additions on the supported land. This is true although the weight of the addition does not exceed the weight of the soil removed in erecting it. When artificial additions are present, this rule applies to that lateral support, and only that support, which the land itself requires, but not exceeding what it would require in the absence of these additions.

Restatement (2d) § 817 *c* & *d.* *See also* Comments *e* to *h.* In short, the duty of lateral support is neither enlarged nor diminished. We also agree with the Restatement that a landowner who breaches the duty not to withdraw "naturally necessary lateral support" is liable for harm to artificial additions to the land as well as for the

---

**3.** There is a separate concept, not involved in this case, of negligent withdrawal of lateral support, with respect to which contributory negligence and assumption of risk may have some application. Restatement (2d) § 819 and Comment g.

**4.** *Nichols, supra* 103 So.2d at 323.

harm to the natural soil itself. Restatement (2d) § 817.

We cannot accept Frisco's contention that once we conclude that the district judge incorrectly submitted the assumption of risk defense to the jury we should hold that Frisco was entitled to a directed verdict on its lateral support claim. The only interrogatory submitted to the jury on the loss of lateral support stated: "Do you find that the defendant Wade Sand & Gravel Company, Inc. withdrew lateral support from the right of way of plaintiff St. Louis-San Francisco Railroad Company, Inc.?" The court instructed the jury that Wade owed Frisco an absolute duty of lateral support for the soil, the railroad track, and any other structures placed on the right of way reasonably necessary to railroad operations. As we have pointed out, Wade only owed an absolute duty to provide the support naturally necessary for the soil of Frisco's right of way.[5]

III. The contract claim against Republic

■ The 1892 conveyance reserved minerals to the grantor "with the right to develop the same at pleasure, but such development shall not in any way interfere with the operation of said . . . railroad." The 1953 conveyance reserved "all mineral and mining rights, including gas and oil, together with the right to mine and remove the same in such manner as will not in any way interfere with the operations of Frisco." Frisco claims that these reservations are also a covenant to not interfere with Frisco's railroad operations when removing minerals from beneath Frisco's right of way. We agree. The language of the reservations themselves makes clear that Republic may remove the minerals beneath the rights of way so long as the removal does not interfere with Frisco's operation. Minerals were removed from beneath the right(s) of way and Frisco's operations were interfered with.

Republic insists that the conveyances do not create a covenant imposing an obligation on Republic, but rather, "only a limitation on the right which Republic reserved with respect to mining under the railroad tracks." The difference between a covenant to mine in such a way as not to interfere with Frisco's operations and a limitation on the right reserved by Republic to mine beneath the right of way is not apparent to us. Assuming the language contained in the conveyances is characterized as a limitation on Republic's right to mine or remove minerals from under the easement, Republic's successor, Wade, went beyond the limitations by interfering with Frisco's operations. This was a breach of the terms of the conveyances and is actionable for damages.

The district court considered that Republic or its successors could be liable for interfering with Frisco's operations only if removal of minerals from under the right of way was intentional as opposed to inadvertent or negligent. No evidence supports this reading of an unexpressed exception into the language of the 1953 deed. If in fact none of the minerals from beneath the right of way had been removed then there would have been no liability under the express covenant to not interfere with Frisco's right of way. But that is not this case. The district court should have granted Frisco's motion for a directed verdict against Republic.

IV. Nuisance

After the slide of October 1973, Wade continued excavating in the same area. Frisco alleged that the continuing excavation by Wade in the same manner as prior to the slide constituted a nuisance. The jury found there was no nuisance. However, the jury instructions on this issue were erroneous.

The Alabama Code defines a nuisance as

---

5. We discuss in part III Frisco's claim against Republic based upon contract. At times Frisco seems to argue that Wade owed it an absolute duty to furnish lateral support based upon an implied provision of the 1953 conveyance from Republic to Frisco. This contract has no bearing on the tort claim against Wade for breach of the common law duty of lateral support. At the charge conference Frisco conceded that its claim against Wade sounded in tort. If Frisco had any contract claim against Wade based upon express or implied provisions of the Republic-Frisco conveyance, it was not submitted to the jury and Frisco made no objection.

anything that works hurt, inconvenience or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man.

Ala.Code § 6–5–120 (1975). In Alabama, "negligence ordinarily is not an element of an actionable [private] nuisance." *Martin Building Co. v. Imperial Laundry Co.,* 220 Ala. 90, 124 So. 82, 84 (1929) (citations omitted); *accord, Baldwin v. McClendon,* 292 Ala. 43, 288 So.2d 761, 769 (1974); *Terrell v. Alabama Water Service Co.,* 245 Ala. 68, 15 So.2d 727, 729 (1943); *Alabama Power Co. v. Stringfellow,* 228 Ala. 422, 153 So. 629, 631 (1934); *Harris v. Randolph Lumber Co.,* 175 Ala. 148, 57 So. 453, 455 (1911); *Vernon v. Edgeworth,* 148 Ala. 490, 42 So. 749, 750 (1906).[6] The Alabama courts reason that "[i]n cases of damages by nuisance, the injurious consequences resulting from the nuisance, rather than acts which produce the nuisance, constitute the cause of action . . . ." *Yolande Coal & Coke Co. v. Pierce,* 12 Ala.App. 431, 68 So. 563, 565 (1915). Therefore, if a defendant uses his land in such a way as to substantially interfere with the use and enjoyment of plaintiff's land, plaintiff has made out a prima facie case for damages caused by a nuisance.[7] Negligence is an element of a private nuisance claim, however, when brought against a manufacturer or other industrial plant if the defendant's operation was not a nuisance at the time operations began and became a nuisance only because of changing conditions in the locality over which the defendant had no control. *Beam v. Birmingham Slag Co.,* 243 Ala. 313, 10 So.2d 162, 165 (1942). The Alabama Code provides that

> No manufacturing or other industrial plant or establishment, or any of its appurtenances, or the operation thereof, shall be or become a nuisance, private or public, by any changed conditions in and about the locality thereof after the same has been in operation for more than one year, when such plant or establishment or its appurtenances, or the operation thereof, was not a nuisance at the time the operation thereof began; but the provisions of this article shall not apply whenever a nuisance results from the *negligent* or improper operation of any such plant, establishment or any of its appurtenances.

Ala.Code § 6–5–127 (1975) (emphasis added). It is not clear whether Wade is entitled to the protection afforded by this statute. Frisco acquired its first right of way in 1892. Both the siding and main line tracks appear to be constructed on the 1892 right of way. If Frisco's claim is that Wade's excavations substantially interfered with the use and enjoyment of the 1892 right of way, then Wade would not be entitled to the statutory protection.

■ The special interrogatories submitted to the jury and the accompanying jury instructions divided Frisco's nuisance claim into two parts, absolute nuisance and negligent nuisance. Had the negligent nuisance charge been based on the statutory provision exempting industrial plants from regular nuisance rules, the division of Frisco's nuisance claim might have been justi-

---

**6.** Negligence is an element of a claim for nuisance if the alleged nuisance is caused by the defendant's failure to act when he has a duty to act, *see Terrell v. Alabama Water Serv. Co., supra* 15 So.2d at 730, or if the defendant's activities are specifically authorized by law, *City of Birmingham v. Scogin,* 269 Ala. 679, 115 So.2d 505, 512 (1959).

**7.** There are available to the defendant various defenses to a claim of nuisance. *See, e. g., Terrell v. Alabama Water Serv. Co., supra* 15 So.2d at 731 (contributory negligence). Where

plaintiff requests injunctive relief to abate an alleged nuisance the Alabama courts, while maintaining their position that the determination whether defendant's use of his land constitutes a nuisance depends on the effects of defendant's conduct on the plaintiff, consider the social utility of the alleged nuisance under the "comparative injury" rule in determining whether to enjoin the nuisance. *Daniels v. Chapuis,* 344 So.2d 500, 503 (Ala.1977); *Montgomery Limestone Co. v. Bearden,* 256 Ala. 269, 54 So.2d 571, 573 (1951).

fied. However, the exemption for industrial plants was submitted to the jury as an affirmative defense to the absolute nuisance claim. The jury should have been instructed to consider the negligent nuisance claim only if Wade fell within the industrial plant exception. The jury charge on the absolute nuisance claim was also erroneous. The relevant portions of the lower court's charge on absolute nuisance are set out in the margin.[8] The primary defect of the charge is that it required the jury to conclude that it was unreasonable for Wade to carry on its quarrying operation next to Frisco's right of way. Frisco was not required to prove the unreasonableness of Wade's quarrying activity. The Alabama cases often refer to the reasonableness of the use of land as a consideration in a nuisance claim and indicate that the surrounding locality is important to deciding reasonableness. *See, e. g., Alabama Power Co. v. Stringfellow, supra* 153 So. at 632. The reasonableness the Alabama courts refer to, however, is the reasonableness of a plaintiff's expectation to be free from the interference with the use and enjoyment of his land which is the basis of the nuisance claim. Wade contends that when the entire charge is read a jury would have understood that the unreasonableness mentioned in the charge referred to the consequences to Frisco and was not a description of the standard of care with which Wade was required to act. We do not agree. Although some language of the charge can be interpreted as Wade suggests, when the charge finally lists what the jury must find in order to hold for Frisco it includes a finding that it was unreasonable for Wade to quarry in the area. This was incorrect and constitutes prejudicial error.

## V. Wade's counterclaim

The access road to Wade's quarry crosses Frisco's right of way. Wade alleged that Frisco intentionally interfered with its business by blocking the access road with railroad cars. Frisco denied that it blocked the crossing intentionally and asserted that, if it did, it was privileged to use its right of way in any manner it saw fit, even if its use interfered with Wade's business. The jury found that Frisco intentionally and maliciously interfered with Wade's business and rejected Frisco's affirmative defense of justification.

Frisco argues that its alleged intentional interference with Wade's business should not have been submitted to the jury because the relationship between Frisco and Wade was at most that of licensor and licensee, and that a licensor is free to interfere with a licensee's use of a license. The licensor-licensee relationship between Frisco and Wade, however, is relevant to only Frisco's affirmative defense of justification. This court recognized in *Thompson v. Allstate Insurance Co.*, 476 F.2d 746 (CA5, 1973), that under Alabama law there are

8. Now, the plaintiff in this case, Frisco, claims that the operation of this rock quarry by defendant Wade constitutes a nuisance to Frisco. This is so, Frisco says, because: One, the operation of the quarry in this locality is abnormally dangerous and necessarily involves so great a risk to its surroundings that its location should be considered unreasonable. Now, that is the theory of absolute nuisance. . . .

The law recognizes that one can conduct a completely legal and reasonable activity in a location that because of the circumstances of that location should be considered a nuisance. The law has named this type of nuisance an absolute nuisance, wouldn't require any negligence, you see. This merely means that where an absolute nuisance interferes with the use of an adjoining landowner's land and causes substantial harm, the defendant will be liable in damages, even though he

acted reasonably in all respects. Therefore, in judging the validity of plaintiff's claim that this quarry is an absolute nuisance you must decide, one, whether because of the circumstances of the locality of this quarry it is unreasonable for defendant to conduct this activity; two, whether the quarrying activities have interfered with the use of the railroad's right-of-way; and three, whether there's been any substantial harm to the railroad directly and proximately caused by the quarrying activities.

\* \* \* \* \* \*

The defendant need not have acted negligently in conducting the quarry activity, if you find there was an absolute nuisance. You must only find that the operation of the quarry in this particular location is unreasonable and was a direct and proximate cause of the injury which plaintiff claims. . . .

only two elements to a plaintiff's prima facie case for intentional interference with another's business:

(1) an intentional act of interference and (2) some consequential harm to the plaintiff's business. *See Sparks v. McCrary,* [156 Ala. 382, 47 So. 332 (1908)]; *Kelite Products v. Binzel,* 5 Cir. 1955, 224 F.2d 131. Justification for interference in another's business is an affirmative defense and is no part of the plaintiff's case.

476 F.2d at 748 (footnote omitted); *accord, Kelite Products, Inc. v. Binzel,* 224 F.2d 131, 139 (CA5, 1955), *Mobile Mechanical Contractors Ass'n v. Carlough,* 456 F.Supp. 310, 330 (S.D.Ala., 1978). Under Alabama law malice is not an element of the plaintiff's prima facie case. *Birmingham Broadcasting Co. v. Bell,* 259 Ala. 656, 68 So.2d 314, 323 (1953); *see Kelite Products, Inc. v. Binzel, supra* at 139 n.8. It does play an important role, however, in determining whether a defendant is entitled to a justification defense.

■ Frisco claims that it was privileged to keep Wade from crossing its right of way because it had a right to the exclusive possession of its right of way, *Central of Georgia Ry. v. Faulkner,* 217 Ala. 82, 114 So. 686, 688 (1927); *Seaboard Air Line Ry. v. Banks,* 207 Ala. 194, 92 So. 117, 119 (1921); *Sadler v. Alabama Great So. R.R.,* 204 Ala. 155, 85 So. 380, 381 (1920), and that, as a result, Wade was a licensee of Frisco whenever it crossed Frisco's right of way. As this court said in *Kelite Products, Inc. v. Binzel, supra,* "[s]ometimes the justification for harmful conduct is the exercise of an obvious and recognized privilege, as that of excluding or ejecting trespassers from one's land." *Id.* at 139. This court went on to note, however, that under Alabama law "if the objective sought is illegal or the means used are improper the actor's harmful conduct is not privileged." *Id.* at 139–40 (footnotes omitted). Within this general rule Alabama courts have concluded that a defendant loses his justification if his motivation is malicious, *see Evans v. Swaim,* 245 Ala. 641, 18 So.2d 400, 404 (1944).[9] If the defendant is acting for a malicious purpose it is not acting for the legitimate purpose claimed as justification. In effect, the claim of malicious motive is a claim that the alleged justification is merely a pretext. Our decision in *Thompson* illustrates the point. There plaintiff alleged that defendant insurance company intentionally interfered with its business by telling "plaintiff's customers that Allstate would not make any estimates of repair on damaged automobiles taken to Thompson's garage and that Allstate would not honor any claim against it if Thompson performed the repair work." 476 F.2d at 748. Defendant moved for judgment on the pleadings because it claimed its actions were justified, "that it [had] an economic interest in insuring that claims against its policyholders are disposed of expeditiously and at the minimum reasonable cost and that its actions were in furtherance of that interest." *Id.* at 750. The *Thompson* court concluded that on a motion for judgment on the pleadings plaintiff's denial that defendant acted in furtherance of its economic interests and the allegation that defendant was motivated "by a desire to injure the plaintiff's business," *id.,* raised a material issue of fact that could only be decided at trial.

Justification is an affirmative defense with the burden of proof on the defendant. One method open to the plaintiff for rebutting a defendant's claim of privilege is to introduce evidence that the defendant acted out of a desire to injure the plaintiff and not in furtherance of some legally protected right. The evidence of unprivileged motive can then be weighed by the jury in deciding whether the defendant has proved by a preponderance of the evidence that it interfered with the plaintiff's business while in pursuit of some legally protected interest.

9. Frisco relies on *Sparks v. McCrary,* 156 Ala. 382, 47 So. 332, 334–35, for the proposition that a malicious motive cannot destroy an otherwise valid defense of justification. Although *Sparks* does indeed say what Frisco claims, the *Evans* case, which is later in time supports our conclusion that a malicious motive destroys a justification defense. Moreover, this court's prior interpretation of Alabama law in both *Binzel* and *Thompson* supports our conclusion.

■ We have already disposed of Frisco's contention that Wade as a licensee cannot complain of Frisco's interference with its use of the license. We now consider Frisco's claim that there was insufficient evidence to support the jury's verdict.[10] Our standard of review is clear: "we are obligated to consider the evidence and all reasonable inferences in the light most favorable to [the party opposing the motion]. . . . A verdict may be directed or a jury verdict overturned only '[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that . . . reasonable men could not arrive at a contrary verdict.'" *Pearce v. Wichita County*, 590 F.2d 128, 132–33 (CA5, 1979) (*quoting Boeing Co. v. Shipman*, 411 F.2d 365 (CA5, 1969)). Under this standard of review we affirm the jury's conclusion that Frisco tortiously interfered with Wade's business.

Several truck drivers testified that when they tried to cross Frisco's tracks there would often be a single engine or a train with very few cars blocking the crossing. They testified that the crossing could easily be cleared by moving the trains very short distances but when they asked the engineers to move the trains their requests were always denied without explanation. The superintendent of the quarry confirmed the testimony of the truck drivers. In addition he explained that on about 50 occasions when the trains were blocking the crossing he called the tower in the Frisco yard that controlled the movement of the trains and asked to have the crossing cleared. It took anywhere from 10 to 40 minutes after a call for the tracks to be cleared. Robin Wade similarly testified to constant blockage of the crossing by short trains when slight movement of the trains would have cleared the crossing. Based on this evidence the jury could have reasonably concluded that Frisco knew with substantial certainty that when it stopped its trains at the crossing Wade's business would be interfered with. We have already noted that it was not necessary for Wade to prove that Frisco acted maliciously in the sense of acting out of ill will.

Wade introduced substantial evidence of the harm caused to its business by the blocking of its crossing. Robin Wade testified that to compensate purchasers of his product for the delays his customers' trucks experienced at the crossing, he sold his product at 10 to 15 cents a ton less than his competitors. This testimony was corroborated by Wade customers. The evidence was sufficient to allow the jury to find that Wade's business was harmed by Frisco's intentionally blocking the crossing.

Frisco's blocking of the crossing may have been in the exercise of its privilege of using its railroad tracks. The existence of the right of way was sufficient evidence to allow Frisco's justification defense to go to the jury, but, by itself, it was not enough to justify a verdict directed in Frisco's favor since it was also possible that trains were left on the crossing for the purpose of interfering with Wade's quarry. It was for the jury to choose between the possibilities. Frisco offered no explanation why it did not move trains that could, to the layman's eye, be moved as little as 100 feet and clear the crossing. The number of times the crossing was blocked coupled with the lack of explanation for the blocking allowed a reasonable jury to conclude that Frisco's interference with Wade's business was not justified because it was not in furtherance of any railroad purpose.

Judgment in favor of Wade and Republic on Frisco's claims against them is REVERSED. Judgment in favor of Wade on its counterclaim against Frisco is AFFIRMED.

■

---

**10.** Frisco properly moved for a directed verdict under Fed.R.Civ.P. 50(a), which was denied. After the jury verdict Frisco moved for judgment n.o.v.